**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Andrew Yang, Jonathan Herzog, Hellen Suh, Brian Vogel, Shlomo Small, Alison Hwang, Kristen Medeiros and Dr. Roger Green, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> New York State Board of Elections <br><br> Defendant. | **ECF CASE** <br><br> CIVIL ACTION: <br><br><br> FIRST AMENDED EMERGENCY COMPLAINT SEEKING RELIEF UNDER FRCP 65(B) |

*"A Republic, if you can keep it,"* Dr. Benjamin Franklin

## COMPLAINT

Plaintiffs Andrew Yang ("Yang"), Jonathan Herzog ("Herzog"),  Hellen Suh ("Suh"), Brian Vogel ("Vogel"), Shlomo Small ("Small"), Alison Hwang ("Hwang"), Kristen Medeiros ("Medeiros") and Dr. Roger Green (Yang, Herzog, Suh, Vogel, Small, Hwang, Medeiros and Dr. Green, the "Plaintiffs"), bring this action both individually and on behalf of all similarly situated, alleging as for their Complaint against Defendant Board of Elections of the State of New York (the "NYS BOE"), upon personal knowledge as to themselves and as to all other matters upon information and belief, based on, *inter alia*, the investigation made by their  attorneys signed below, as follows:

### PRELIMINARY STATEMENT

1.      This action is brought on an emergency basis under Federal Rule of Civil Procedure 65 and seeks to establish the fundamental principle, that in a democracy there is no right more important than the right to vote.

2.      This First Amended Complaint is being submitted to the Court pursuant to Federal Rule of Civil Procedure 15 as of right, primarily to correct errors in inartful drafting of the Complaint (ECF Dkt. 1) due to emergency drafting.

3.      Due to the unprecedented and tragic nature of the COVID-19 pandemic, the New York Democratic Presidential Primary, originally scheduled for April 28, 2020, was postponed until June 23, 2020, so that it would coincide with numerous congressional, State Senate, State Assembly and other local elections and therefore minimize the threat to the health and safety of New York voters and election workers.  These non-presidential elections are not being cancelled by the NYS BOE, only the Presidential primary is, except that Defendant has kept their chosen candidate still on the ballot, an authoritarian and illegal action that creates a horrible precedent for our democracy.

4.      Rather than allow New York Democratic Party voters to vote by mail (as the State is allowing for congressional and other elections pursuant to Executive Order 202.15), on April 27, 2020, the New York State Board of Elections' commissioners voted unanimously by resolution to discriminatorily and arbitrarily and unconstitutionally remove ten out of the eleven qualified candidates and their delegates (including Plaintiffs) from the the June 23, 2020 Democratic presidential primary, while allowing the other "down-ballot" elections to proceed. This April 27 decision was made under the color of law, which this lawsuit is challenging, specifically an amendment to the New York Election Law made in Section 2-122-a (13), which was signed into law by Governor Cuomo on April 13 (Senate Bill S7506B) as an omnibus appropriations bill – effectively a bill of attainder that the United States Constitution does not allow (*see* U.S. Const. Art. 1, Section 9, "No bill of attainder or ex post facto Law shall be

passed."). This *ex post facto* law changes the rule of this important election midstream and must be nullified.

5.      This unprecedented and unwarranted move by Defendants infringes upon the rights of Plaintiffs and all New York State Democratic Party voters, of which there are estimated to be more than six million, as it fundamentally denies them the right to choose our next candidate for the office of President of the United States.

6.      Moreover, each of the Plaintiffs save Yang, who was the candidate for public office, were running to be among the 274 pledged delegates representing New York State at the Democratic National Convention, where the party chooses its candidate (of which 184, possibly including some of the Plaintiffs, depending on the results, were to be elected by registered Democratic Party voters. Denying each of the Plaintiffs the opportunity to represent Yang at the convention when duly qualified under the New York Election Law through hours upon hours of hard work in the cold is a denial of their fundamental rights, as well the more than 20,000 New York registered Democrats who signed petitions to nominate Yang and the Plaintiffs to appear on the April 28 (moved to June 23) election ballot. Other candidates, such as Senator Bernie Sanders of Vermont, whose campaign filed nearly 60,000 petition signatures, are equally harmed, as well as their supporters, not to mention undecided voters. In fact, this law harms not only the more than six million Democratic Party voters in the State, but it harms all candidate's campaigns whose workers and volunteers did the work to access the ballot under the State's ballot access rules. Defendants actions directly and adversely impact the future our country.

7.      Plaintiffs therefore seek to recover actual and other damages as well as declaratory, injunctive and equitable relief, together with court fees, attorney fees and costs, so as to reinstate the New York State Democratic Presidential primary in a manner that is both safe to

voters and election workers and in accordance with the rules in place when candidates sought access to the ballot.

## PARTIES

8.      Each of the Plaintiffs herein is a Citizen of the United States over the age of eighteen years.

PLAINTIFF ANDREW YANG

9.      Plaintiff Yang is a natural person who resides in New York County, New York.

10.     Yang campaigned for more than two years to become President of the United States and has worked as a lawyer, businessman, social activist, and commentator.

11.     Yang is also a registered New York State Democratic Party voter.

12.     Attached hereto as Exhibit A is a signed affidavit from Yang dated April 28, 2020.

PLAINTIFF JONATHAN HERZOG

13.     Plaintiff Jonathan Herzog is a natural person who resides in New York County, New York.

14.     Plaintiff Herzog is a registered New York State Democratic Party voter.

15.     Plaintiff Herzog is a candidate for delegate to the Democratic National Convention to represent New York's 10th Congressional District pledged to Andrew Yang. In addition, he is a candidate for United States Congress for the House of Representatives representing New York's 10th Congressional District.

16.     Attached hereto as Exhibit B is a signed affidavit from Herzog, dated April 27, 2020.

PLAINTIFF HELLEN SUH

17.     Plaintiff Hellen Suh is a natural person who resides in New York County, New York.

18.     Plaintiff Suh is a registered New York State Democratic Party voter.

19.     Plaintiff Suh is a candidate for delegate to the Democratic National Convention to represent New York's 10th Congressional District pledged to Andrew Yang.

20.     Attached hereto as <u>Exhibit C</u> is a signed affidavit from Suh, dated April 27, 2020.

<u>PLAINTIFF BRIAN VOGEL</u>

21.     Plaintiff Brian Vogel is a natural person who resides in Monroe County, New York.

22.     Plaintiff Vogel is a registered New York State Democratic Party voter.

23.     Plaintiff Vogel is a candidate for delegate to the Democratic National Convention to represent New York's 25th Congressional District pledged to Andrew Yang.

24.     Attached hereto as <u>Exhibit D</u> is a signed affidavit from Vogel, dated April 27, 2020.

<u>PLAINTIFF SHLOMO SMALL</u>

25.   Plaintiff Shlomo Small is a natural person who resides in Queens County, New York.

26.   Plaintiff Small is a registered New York State Democratic Party voter.

27.   Plaintiff Small is a candidate for delegate to the Democratic National Convention to represent New York's 5th Congressional District pledged to Andrew Yang.

28. Attached hereto as <u>Exhibit E</u> is a signed affidavit from Small, dated April 27, 2020.

<u>PLAINTIFF ALISON HWANG</u>

29. Plaintiff Alison Hwang is a natural person who resides in Nassau County, New York.

30. Plaintiff Hwang is a registered New York State Democratic Party voter.

31. Plaintiff Hwang is a candidate for delegate to the Democratic National Convention to represent New York's 4th Congressional District pledged to Andrew Yang.

32. Attached hereto as <u>Exhibit F</u> is a signed affidavit from Hwang, dated April 27, 2020.

<u>PLAINTIFF KRISTEN MEDEIROS</u>

33. Plaintiff Kristen Medeiros is a natural person who resides in Suffolk County, New York.

34. Plaintiff Meideros is a registered New York State Democratic Party voter.

35. Plaintiff Meideros is a candidate for delegate to the Democratic National Convention to represent New York's 1st Congressional District pledged to Andrew Yang.

36. Attached hereto as <u>Exhibit G</u> is a signed affidavit from Medeiros, dated April 27, 2020.

<u>PLAINTIFF DR. ROGER GREEN</u>

37. Plaintiff Dr. Green is a natural person who resides in Ulster County, New York.

38. Plaintiff Dr. Green is a registered New York State Democratic Party voter.

39. Plaintiff Green is a candidate for delegate to the Democratic National Convention to represent New York's 19th Congressional District pledged to Andrew Yang.

40. Attached hereto as <u>Exhibit H</u> is a signed affidavit from Dr. Green, dated April 27, 2020.

**<u>DEFENDANTS</u>**

41. Defendant New York State Board of Elections ("NYS BOE") is an agency of the New York State government within the New York State Executive Department responsible for enforcement of the election laws.

42. The NYS BOE has its principal place of business in the County of Albany, New York, with an address of NYS Board of Elections, 40 North Pearl Street, Suite 5, Albany, New York 12207, also with an office at 200 Varick Street, 10th Floor, New York, NY 10014.

43. Defendant NYS BOE entered an appearance by its Commissioner and Co-Chair, Douglas Kellner ("Kellner"), by filing a letter asking for an expedited briefing schedule to this action on April 29, 2020 (ECF Dkt. No. 4), which this Court granted before Plaintiffs had time to respond to the letter (ECF Dkt. No. 5). Kellner is an attorney admitted to the State of New York and to this Court and therefore has consented to acceptance of electronic service in this action on behalf of Defendant. His letter also in paragraph 2 mentioned that Defendants have notified the office of the New York Attorney General to request representation (see para. 2, ECF Dkt No. 4).

## JURISDICTION AND VENUE

44. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 (Federal question), §1343(a)(3) (equal rights) and §1343(a)(3) (right to vote)

45. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the acts or omissions giving rise to Plaintiffs' claims have occurred in this District.

46. Venue is further properly laid in the Southern District of New York because Defendants reside, are found, have agents, and transact business in this District, pursuant to 28 U.S.C. §1391.

47. Resolving this case in Federal court is superior to other methods for the fair and efficient resolution of this controversy. The Federal court dispute resolution process presents fewer case management difficulties, and provides the benefit of single adjudication, economy of scale, and comprehensive supervision by a single court. The damages suffered by Plaintiffs, from diverse and distant geographic locations throughout the state, are relatively small financially as compared to the expense and burden of individual

prosecution of the claims asserted in this litigation. Thus, absent the Court exercising jurisdiction over this dispute, it would not be feasible for Plaintiffs to redress the wrongs done to them in a timely and efficient manner at State Courts (which are primarily closed at present time due to the COVID-19 pandemic). It would also be grossly inefficient for the judicial system to preside over such large numbers of individual cases (thousands of delegate candidates, tens of thousands of registered voters who signed petitions, and millions of voters who are being denied the right to vote). Further, inherent in litigation is the potential for inconsistent or contradictory judgments that would greatly magnify the delay and expense to all parties and the judicial system. Additionally, state court action presents an opportunity for bias, as the highest court in New York, the Court of Appeals, has judges appointed by the Governor who signed into law the law that is being challenged in this action as violating the U.S. Constitution. Finally, a State Court action addressing Defendant's action and challenging the law that granted them authority to act is less appropriate since the harms alleged in this action are foremost federal rights connected to the United States Constitution. Therefore, this dispute between the Plaintiffs and the Defendant NYS BOE is most appropriately resolved through this Federal court.

48. The 11th Amendment to the United States Constitution does not bar this suit as this is a suit by solely and entirely resident-citizen-voters of New York State, predominantly suing to protect their federal rights under federal law (see page 2 of 4 of ECF Dkt. No. 4) where Kellner erroneously alleges that lawsuits against the state are barred), nor should it bar such suit under general rules of constitutional interpretation and common sense since the federal courts have a long history of protecting federal civil rights infringed by states on its citizens (see, e.g., Brown v. Board of Education of Topeka, 347 U.S. 483 (1954)).

## FACTUAL ALLEGATIONS

### ABOUT THE COVID-19 PANDEMIC

49. The Coronavirus disease 2019 ("COVID-19") has caused unimaginable tragedy and death. It is a serious disease caused by a virus that is believed to be first identified in Wuhan, Province, China in December 2019.

50. As of April 27, COVID-19 has caused more than 211,000 deaths and, infecting more than 3,041,000 people throughout the world. In New York City alone, COVID-19 to date has caused over 17,000 deaths. In excess of 1,600 people have died in Nassau County, over 1,100 in Suffolk County, over 100 people in Monroe County, with 24 deaths in Ulster County.

51. Due to the novel nature of COVID-19, governments have been issuing "Stay-at-home" and other orders designed to protect individuals from the spread of the disease.

52. Plaintiffs in no way by this action seek to undermine the health and safety of New York voters or election workers, but rather seek to uphold their fundamental rights under the Constitutions of the United States and the State of New York – most specifically, their right to vote.

53. Despite the discouraging nature of COVID-19, there is reason to be optimistic for our future as the British Broadcasting Corporation's Laura on April 29, at 21:18 that there have only been four new cases of the virus reported in the last twenty-four hours in the entire country, all found at the airport, and zero within the county.

### ABOUT THE JUNE 23, 2020 DEMOCRATIC PRESIDENTIAL PRIMARY ELECTION

54. The New York State Democratic presidential primary was originally scheduled to take place on April 28, 2020.

55. Each of the Plaintiffs qualified to be a candidate for this election under the requirements of the New York Election Law, Yang for the office of President of the United States, and each of the others as Delegates to the 2020 Democratic National Convention from the various 27 Congressional Districts throughout the State pledged to support Andrew Yang.

56. Candidates for President and Delegate to the Convention met the requirements of the NY Election Law by very hard and unpaid work in the cold winter months, namely circulating designating petitions to be signed by New York registered Democrats. Plaintiffs Herzog, Suh, Vogel, Small, Hwang, Medeiros and Dr. Green all attest this hard in their affidavits (see Exhibits B-H). Attached hereto is Exhibit I – an affidavit of non-party Hadassah Mativesky who is running to be a Yang delegate from Congressional District 22 and attests to her sacrifices. Attached hereto as Exhibit J is an affidavit of non-party Eli Smith, a Bernie Sanders supporter from Kings county, who, like Plaintifffs, believes his constitutional rights are being infringed by the Defendant's action.  Many, if not most candidates, risk their personal health and safety by gathering these signatures, and all expended great effort due to their belief in their candidates and candidacies. See attached hereto Exhibit K of Nchama Gluck of Rockland County, for example, who, as a delegate, endured particular hardship in gathering Yang signatures and signatures for herself and her slate as Yang delegate-candidates.

57. Besides Yang, numerous other good Democratic Party candidates met the requirements of NY Election Law to be on the Democratic Presidential primary ballot, namely Michael Bennet, Michael R. Bloomberg, Pete Buttigieg, Tulsi Gabbard, Amy Klobuchar, Deval Patrick, Bernie Sanders, Tom Steyer, Elizabeth Warren and the "presumptive" nominee Joe Biden ("Other Presidential Candidates"), each having delegate slates of their own. Of

these Other Presidential Candidates, upon information and belief, only Michael R. Bloomberg is a resident of New York State and, after spending hundreds of millions of dollars on his campaign, has amassed 55 pledged delegates to the Democratic National Convention to date.

58. The Democratic party delegate selection rules are complicated, but basically allow for candidates to send delegates to the Democratic National Convention in Milwaukee (originally scheduled for July 13-16, and now postponed until August 17-20, due to the COVID-19 pandemic) if such candidate receives at minimum 15% of the vote in a Congressional District. Delegates at the convention then select the nominee for the party's candidate to become the next President of the United States and help shape its rules and platform.

59. Each of Yang, as candidate for President, and the other Plaintiffs, as candidates for Delegates, worked tirelessly throughout the cold winter months of January and February 2020 to secure signatures from NY registered Democrats in order to secure access to the ballot under New York Election Law. Yang secured more than 20,000 signatures throughout the state and each of the other Plaintiff-delegates secured hundreds, if not thousands, of signatures working with other delegates and volunteers so that they could be candidates for delegates to the summer convention.

60. The same applies to efforts made by campaigns for other presidential candidates and their pledged delegates.

61. The April 28, 2020 primary was then rescheduled to coincide with the June 23, 2020 Federal and State elections, so as to protect the safety of voters and election workers during the pandemic (Executive Orders 202.12).

62. An action taken by the Governor of New York to help stop the spread of the disease was Executive Order 202.15, which allows New York voters to vote by mail if they request an absentee ballot:

- Section 8-400 of the Election Law is temporarily suspended and hereby modified to provide that due to the prevalence and community spread of COVID-19, an absentee ballot can be granted based on temporary illness and shall include the potential for contraction of the COVID-19 virus for any election held on or before June 23, 2020.
- Solely for any election held on or before June 23, 2020, Section 8-400 of the Election Law is hereby modified to allow for electronic application, with no requirement for in-person signature or appearance to be able to access an absentee ballot.

63. In other words, Executive Order 202.15 allows any NY registered voter eligible to vote on June 23 the right to apply for an absentee ballot electronically and then to vote by mail if they so choose to exercise that right.

64. On April 24, Governor Cuomo announced that he will issue another Executive Order mandating that the New York State Board of Elections automatically mail every New Yorker a postage-paid application for an absentee ballot. "We're making great progress to flatten the curve [of new cases] and decrease the spread of infection, but we don't know when this pandemic will end and we can't put democracy on hold."

65. Despite the Governor's words, Defendant NYS BOE is doing worse than putting democracy on hold, it is partially cancelling democracy by cancelling the Democratic presidential primary.

66. Despite the Governor's orders, on April 27, 2020, the NY State Board of Elections, by unanimous vote and resolution of its two Democratic Party commissioners, Kellner and

Andrew Spano ("Spano"), declared that the New York Presidential Primary would be cancelled entirely, nevertheless allowing the "down ballot" Federal, Congressional and State elections to continue. *See* pages 3 and 4 of ECF Dkt. 4 "Resolution Related to the Determination of Publicly Suspended Presidential Campaigns Pursuant to Section 2-122(a) of the Election Law." (the "Resolution").

67. By allowing the other June 23 elections to continue while cancelling the Presidential primary, Defendant NYS BOE is:

a. Disenfranchising millions of New York voters by not allowing them to express their preference for candidates that duly qualified for ballot access under the NY Election Law, specifically for the office of President of the United States and the party positions of delegates to the Democratic National Convention;

b. Disenfranchising tens of thousands of New York voters that signed pursuant to the NY Election Law to nominate Yang as candidate for the office of President of the United States and the other Plaintiffs named herein for the party position of Delegate to the Democratic National Convention, as well as supporters of the Other Presidential Candidates and their delegate candidates;

c. Disenfranchising hundreds of persons similar to the Plaintiffs herein who intended to run for delegate pledged to Yang or the Other Presidential Candidates in the NY Democratic Presidential primary;

d. Arguably suppressing voter turnout as voters will have less incentive to vote if they cannot cast a vote for the highest office in the land, thereby negatively impacting challenger or insurgent candidates such as Herzog;

e.  Creating ambiguity for the Democratic National Convention – how will New York's 274 delegates (184 of which are like the Plaintiff and accordingly to the rules to be elected) for the national convention be chosen this summer, despite the clear rules promulgated by the Democratic Party and the NY Election Law; and most importantly,

f.  Creating a bad precedent for our current President to suspend the November 2020 election as the current President can make the same argument as the Defendant, namely, that it is too dangerous to vote as no one can accurately predict when it will be 100% safe, if ever again, to leave one's house or touch an object, such as an election ballot, that could be contaminated with the COVID-19 virus. The retroactive application of laws, or ex post facto rulemaking – prohibited by the U.S. Constitution (US. Const. Art. 1, Section 9) and the common law – should not be allowed here by Defendant's action on April 27 to create this dangerous, liberty threatening precedent.

68. Upon information and belief, despite what Commissioner and NY State Democratic Party Co-Chair Douglas A. Kellner called "frivolous" (aka allowing the Presidential primary), it would be frivolous to not allow it. In other words, upon information and belief, despite there being a "presumptive nominee" it would cause chaos, confusion, and irreparable harm to cancel the New York Democratic Presidential Primary as it will infringe so many important rights for so many millions of people.

69. On April 27, 2020, the Bernie Sanders campaign called the decision by Defendants "an outrage, a blow to American democracy" and suggested that New York should lose its delegates entirely. Sanders, like Yang did in February 2020,

14

suspended his campaign on April 8, 2020 but never asked for his name to be removed from the ballot. Each of Yang and Sanders and the Other Presidential Candidates suspended their campaigns prior to April 13, 2020, when the *ex post facto* law, §2-122-A(13) came into effect. See attached hereto as <u>Exhibit L</u> a letter written to Kellner and Spano on April 26, 2020 by counsel to Senator Bernie Sanders, Malcolm Seymour of the law firm Foster Garvey (the "Seymour Letter").

70. Losing delegates, and the concomitant right to vote, is quite simply an outrage that is illegal and will cause irreparable harm to Plaintiff and New York voters. It will cause candidates like Yang and the Plaintiff delegates to lose influence at the party's convention, and the possibility, even if remote, of winning the nomination to be the candidate for President. Simple because party insiders like Kellner and Spano deem Biden to the "presumptive nominee" does not mean he will be the nominee, as only such determination can be made at the convention in Milwaukee, and as the COVID-19 pandemic has shown, modern life can be quite unpredictable.

71. Defendant's justification for cancelling the election centered upon the fact that as there are only contested "down-ballot" elections in 42 of New York's 62 counties, in the 20 counties with no down- ballot elections, the election could be cancelled entirely, thereby minimizing the risk of spreading COVID-19.

72. The counties that do not have down-ballot elections are located mostly in upstate New York and represent a small fraction of total voters, estimated be around 2% of the voting population where social-distancing is more easily done because of low population density.

73. It is widely known that in these districts where there are no down-ballot elections, the threat of COVID-19 is less prevalent than as compared to more urban district of the state such as New York City, which further negate Defendant's justification for their illegal action.

74. Defendant's justification based on health grounds has no legitimate logic or reason, but rather was a capricious action designed to favor the presumptive nominee, Joseph Biden (who has 1,305 delegates, where 1,991 are needed to win the nomination), and to suppress voter turnout in the local elections where party-establishment favored candidates could be favored by low voter turnout.

75. This action necessitates an emergency proceeding as the next NYS Board of Elections Commissioners meeting is not scheduled until May 27, 2020, which will not allow sufficient time for the State to prepare for the June 23 election, if the April 27 decision is to be overturned by administrative action or appeal. As the scheduled June 23and fast approaching, Plaintiff's sole means of redress is to take action in this court to protect their federally guaranteed constitutional rights.

76. Defendant Board Co-Chairman Douglas Kellner while characterizing the primary cancellation as a "very difficult decision," nevertheless claimed that state law permits the removal of candidates from the ballot when they have suspended their campaigns, as Sanders and Yang have done and, further, endorsed "presumptive" nominee Joe Biden.

77. The Defendant claims to have acted under the color of law (§ 2-122-a(13) of the Election Law only signed into law on April 13, 2020, discussed below), but such law violates the Constitution of the United States and the Constitution of the State of

New York, as it denies voters due process and the right to vote, and therefore must be invalidated, removing the authority of the Defendant to take the actions complained of herein.

78. Neither Yang, nor the other Plaintiffs, nor the other candidates in New York for party delegate positions who were to appear on the ballot, nor, upon information and belief the Other Presidential Candidates or their delegates, after working tirelessly to secure their names on the ballot, asked the Defendant to remove their names from the ballot.

79. Ironically, despite their ostensible purpose to "save lives," Defendant and their action cancelling the primary are attempting to cause grave harm to the Democratic Party and to our democracy. They desire to leave the "presumptive" nominee on the ballot, which would presumptively be of marginal extra effort to include the names of Yang and the Other Presidential Candidates, the names of the Plaintiffs, and other delegate candidates on the ballot that duly qualified under the Election Law.

ABOUT THE UNCONSTITUTIONAL ACTION OF THE DEFENDANT ON APRIL 27 AND UNCONSTITUTIONALITY OF NY NEW YORK ELECTION LAW § 2-122-A(13) SIGNED INTO LAW ON APRIL 13, 2020

80. The Resolution passed April 27, 2020 by Defendants was a resolution passed acting with poor discretion and poor interpretation and reading of § 2-122-A(13) of the Election Law, which only came into force and effect when it was signed on April 13, 2020, so poor in fact, that it was illegal.

81. § 2-122-A(13) of the Election Law reads:

Notwithstanding any inconsistent provision of law to the contrary, prior to forty-five days before the actual date of a presidential primary election, if a candidate for office of the president of the United States who is otherwise eligible to appear on the presidential primary ballot to provide for the election of delegates to a national party convention or a national party conference in any presidential election year, publicly announces that they are no longer seeking the nomination for the office of president of the United States, or if the candidate publicly announces that they are terminating or **suspending** their campaign, or if the candidate sends a letter to the state board of elections indicating they no longer wish to appear on the ballot, the state board of elections **may** determine by such date that the candidate is no longer eligible and omit said candidate from the ballot; provided, however, that for any candidate of a major political party, such determination shall be solely made by the commissioners of the state board of elections who have been appointed on the recommendation of such political party or the legislative leaders of such political party, and no other commissioner of the state board of elections shall participate in such determination. (**Emphasis added)**

82. § 2-122-A(13) of the Election Law is an *ex post facto* law in that changes the rules of this election midstream, retroactively changing the rules of the Democratic presidential primary and the New York Election Law (including ballot access rights for candidates and so negatively impacting voter rights as to shock the conscience) and is thereby illegal. Furthermore, it throws an unwanted monkey-wrench into the entire Democratic Party nominating process, further disenfranchising candidates such as Plaintiffs and voters such as Plaintiffs, and all those similarly situated.

83. § 2-122-A(13) of the Election Law is vaguely written law in that it does not define suspending." What can be suspended can also be unsuspended.

84. Neither Yang nor many of the Other Presidential Candidates, nor any of the Plaintiff, or others similarly situated delegates for Other Presidential Candidates have terminated their campaigns, at least as judged by filing termination statements with the Federal Election Commission prior to the date of this action or prior to the date of the unconstitutional passage of the § 2-122-A(13) of the Election Law (April 13, 2020). Yang, and Other Presidential Candidates likewise never informed the Defendant that they would like their

names removed from the ballot. Yang and the Plaintiffs and the Other Presidential Candidates may not have suspended their campaigns if the § 2-122-A(13) of the Election Law were passed prior to their suspensions.

85. The passage into law of the unconstitutional § 2-122-A(13) of the Election Law, and the resulting Resolution made by Defendant thereto cancelling the presidential primary in New York, is subject to strict scrutiny under the Constitution of the United States because the Resolution adopted is not neutral – it favors the "presumptive nominee" to the clear detriment of the Plaintiffs, and all others similarly situated, including the more than six million voters, including Plaintiffs, that may wish to cast a vote for a candidate that duly qualified under the New York Election Law during the most important portions of their campaigns (i.e. ballot access and the rules in place at the time).

86.  As § 2-122-A(13) of the Election Law and the Resolution violate the rights of voters to vote, they must be found to be unconstitutional.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**1st and 14th Amendments, U.S. Const. Amend I and XIV, 42 U.S.C. § 1983, 28 U.S.C. 2201, 2202
UNDUE BURDEN ON AND DENIAL OF THE RIGHT TO VOTE**

87. Plaintiffs incorporate and re-allege each allegation set forth in the preceding paragraphs of this Complaint.

88. Under the Fourteenth Amendment, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV.

89. Defendant's April 27 decision to cancel the Presidential primary violates Plaintiffs' equal protection of the laws in that it arbitrarily denies them the rights they secured under the

NY Election Law as qualified candidates. Equally, it denies them the right to cast their votes for duly qualified candidates.

90. Any law, such as § 2-122-A(13) of the Election Law enacted *ex post facto*, that purports to give Defendants the authority to cancel the election violates the Fourteenth Amendment.

91. The Defendant has neither a compelling interest, important interest, or even a legitimate interest in cancelling the June 23 election and removing Plaintiffs from the June 23 ballot, given that they are allowing other Federal and State election to occur on the same date, therefore invalidating their argument that the decision was made for health and safety reasons.

92. Defendant has failed to protect the voting rights of Plaintiffs and all other similarly situated candidates and New York State voters.

93. Defendant's decision to cancel the election and remove Plaintiffs and other similarly situated from the June 23 ballot will subject Plaintiff Yang and the other Plaintiffs and others similarly situated to unequal treatment under the law, in violation of the Fourteenth Amendment to the Constitution, based on the arbitrary and capricious nature of their decision, and not based on any actual set of facts (i.e. if their decision were truly motivated by concerns for public health and safety, they would have also cancelled the other Federal and State elections on the same date).

94. Defendant has violated and will continue to violate the Fourteenth Amendment equal protection rights of Plaintiffs if the June 23, 2020 presidential primary election is permanently cancelled and their hard work under the rules then in effect to be candidates is scrubbed off the June 23 ballot.

95. Under the *Anderson-Burdick* balancing test, a court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the First and Fourteenth Amendment rights that the plaintiff seeks to vindicate against "'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" See, *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

96. Because of the COVID-19 pandemic, it is reasonable to take precautions to allow for safe voting, but such decisions cannot arbitrarily pertain to some elections and not other as the Defendant has done here.

97. Defendants cannot provide any colorable justification as to why they cancelled the presidential primary and not other federal or state primaries. Defendant's actions have created a dangerous precedent.

98. By allowing voters to vote absentee by mail, it is not sufficient for Defendants to argue that cancelling elections entirely in twenty counties where there are no federal or state primaries on June 23, the threat of COVID-19 is materially reduced as compared to the other 42 more densely populated districts where federal and state elections will still take place.

99. It is clear that Defendant's action to cancel the presidential primary is an ill-conceived political decision, rather than a rational decision to protect voter and worker health and safety (especially given that everyone can vote by mail due to COVID-19).

100. In summary, the challenged law (granting Defendants authority to act) and the challenged decision by Defendant to cancel the election, as applied to and during the

extraordinary conditions of the COVID-19 pandemic, are unconstitutional infringements upon the voting rights of Plaintiffs, unsupported by a state interest sufficient to justify the resulting burdens on the right to vote, and thus violative of the First and Fourteenth Amendments.

## SECOND CAUSE OF ACTION

### 14th Amendments, U.S. Const. Amend XIV, 42 U.S.C. § 1983
### DENIAL OF PROCEDURAL DUE PROCESS

101.     Plaintiffs incorporate and re-allege each allegation set forth in the preceding paragraphs of this Complaint.

102.     The Due Process Clause of the United States Constitution prohibits the states from depriving "any person of . . . liberty . . . without due process of law." U.S. Const. Amend. XIV, § 1. Determining which protections are due in a given case requires a careful analysis of the importance of the rights and the other interests at stake. See *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976); *Nozzi v. Hous. Auth. of City of L.A.*, 806 F.3d 1178, 1192 (9th Cir. 2015). Courts must first consider "the nature of the interest that will be affected" by the government's action as well as the "degree of potential deprivation that may be created" by existing procedures. *Nozzi*, 806 F. 3d at 1192–93. Second, "courts must consider the 'fairness and reliability' of the existing procedures and the 'probable value, if any, of additional procedural safeguards.'" Id. at 1193 (quoting *Mathews*, 424 U.S. at 343). Finally, courts must consider "the public interest, which 'includes the administrative burden and other societal costs that would be associated with' additional or substitute procedures. Id. (quoting Mathews, 424 U.S. at 347). Overall, "due process is flexible and calls for such procedural protections as the particular situation demands." Mathews, 424 U.S. at 334, (quotation and citation omitted).

103.     Defendant's action, maintaining some elections and cancelling Plaintiff's, must comport with due process, which it is does not.

104.     "When an election process 'reache[s] the point of patent and fundamental unfairness,' there is a due process violation." *Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1183 (11th Cir. 2008) (quoting *Roe v. Alabama*, 43 F.3d 574, 580 (11th Cir. 1995))

105.     In cancelling Plaintiff's election, but allowing others to occur on the same day, and allowing solely "presumptive nominee" Joe Biden's name on the June 23 ballot, it is clear Defendant's action is fundamentally unfair, unjust and illegal. The nature of the interest at stake in this case, namely the right to vote and to have that vote count, is the most sacred liberty interest of all because it preserves all other basic civil, human, economic and political rights.

106.     But the challenged law enabling the Defendants to act (§2-122-A(13) of the NY Election Law) and the challenged decision of the Defendant on April 27, 2020, the Resolution, threaten to deprive Plaintiffs and all New York voters of this right. Considering the tragedy and risk presented by the novel Corornavirus, Defendant must exercise caution, as they have, by allowing voters to cast their ballots in the June 23, 2020 election by mail. However, the challenged law and action by Defendant as applied under the extraordinary conditions of the COVID-19 pandemic, are entirely inadequate in all other respects, in that they cancelled Plaintiffs' election but not others, and allowing the presidential primary to continue solely with the "presumptive" nominee, denying everyone else's rights, particularly Plaintiffs and all others similarly situated as voting members of the electorate.  It would be relatively minimal burden to the State to not

violate Plaintiffs' and everyone else's voting rights, and simply include all candidates on the June 23 ballot, thereby not violating Plaintiffs' rights. The §2-122-A(13) of the NY Election Law amended only April 13 was passed *ex post facto*, effectively hidden in the darkness of an appropriations bill, and is a *prima facie* denial of procedural due process for our State's and country's election fairness and integrity, including the rights of Plaintiffs.

### THIRD CAUSE OF ACTION

### NY STATE DUE PROCESS, RIGHT TO VOTE, DENIAL OF PROCEDURAL DUE PROCESS New York State, Constitution1821, Article 2

107.     Plaintiffs incorporate and re-allege each allegation set forth in the preceding paragraphs of this Complaint.

108.     The challenged §2-122-A(13) of the NY Election Law and the challenged decision of the Defendant's on April 27, 2020, the Resolution, violate Plaintiff's rights under the New York Constitution under Article II.

109.     Defendant actions violate Plaintiff's right to vote, and provide no justifiable reason to allow the election for certain representatives in government (congressional, State Senate, State Assembly) and not others, arguably more important (Presidential).

110.     Defendants' actions are arbitrary and whimsical and provide no justification or valid reason. Moreover, they favor one sole candidate who is allowed to remain on the ballot, and must be therefore subject to strict scrutiny.

111.     Moreover, Defendant has violated Plaintiff's due process rights under the New York State Constitution, as amended.

### FOURTH CAUSE OF ACTION

**Declaratory Judgment**

**28 U.S.C. §§ 2201, 2202**

**Lack of Authority for Defendants to Act**

112.    Plaintiffs incorporate and re-allege each allegation set forth in the preceding paragraphs of this Complaint.

113.    Defendant's action denies Plaintiff's their most basic and important right as Americans: participating in democratic elections.

114.    Defendant's action defies logic and valid reason as it allows certain elections to continue, while cancelling Plaintiffs' election, which is fundamentally unjust.

115.    The challenged law (§2-122-A(13) of the NY Election Law) and the challenged Resolution of the Defendant's on April 27, 2020 are unconstutional and must be declared as such, particularly because they are not neutral (favoring one candidate only), are vague and are *ex post facto* rue making that call into question the legitimacy of the entire electoral process.

116.    Plaintiffs therefore seek a declaration from this Court that Defendants not only do not have the authority to cancel the Presidential primary and remove Plaintiffs from the June 23 ballot, as well as all similarly situated candidates, given the extraordinary circumstances, but have a duty to maintain the election to simultaneously protect both the right to vote for Plaintiff's and the right for Plaintiffs to appear as candidates on the June 23 ballot.

117.     Plaintiffs request this extraordinary remedy for the June 23 election, considering the unprecedented emergency caused by COVID-19 pandemic and how it is being dealt with for elections occurring on the same date, that Plaintiff's rights, the unequivocal right

to vote, the right for due process and equal protection under the law, must be enforced and upheld in an indiscriminatory and non-arbitrary manner.

## **REQUESTS FOR RELIEF**

WHEREFORE, Plaintiff and pray that this Honorable Court grant the following relief:

a.  That the Court determine that this action may be maintained under Rule 65(b) of the Federal Rules of Civil Procedure;

b.  On Plaintiffs' first cause of action for violations of the 1st and 14th Amendments of the U.S. Constitution, actual or statutory damages, whichever is greater, as the Court deems appropriate in an amount to be determined at trial;

c.  On Plaintiffs' second cause of action for denial of Plaintiff's right to procedural due process under the 14th Amendments of the U.S. Constitution, actual or statutory damages, whichever is greater, as the Court deems appropriate in an amount to be determined at trial;

d.  On Plaintiffs' third cause of action for denial of Plaintiff's right to procedural due process and right to vote under the NY State Constitution, actual or statutory damages, whichever is greater, as the Court deems appropriate in an amount to be determined at trial;

e.  On Plaintiff's first through fourth causes of action, an order enjoining Defendants from cancelling the New York Democratic Presidential Primary on June 23 and reinstating the same such that all duly qualified candidates under the Election Law as it was in effect prior to April 13, 2020 remain on the ballot;

f.  On Plaintiff's first through fourth causes of action, an order declaring the Resolution null and void;

g.  On Plaintiff's first through fourth causes of action, an order declaring §2-122-A(13) of the NY Election Law null and void, at least as it pertains to the coming June 23 election due to its unconstitutional nature;

h.  Attorneys' fees;

i.  Costs for this action; and

j.  That the Court use its inherent powers to grant such other and further relief as it deems just and proper at law and in equity to vindicate the claims brought forth in this action by Plaintiffs.

Dated: April 30, 2020

Respectfully submitted,


By:  _/s/ Jeffrey M. Kurzon_____
Jeffrey Mead Kurzon, Esq.
Bar No. JM3388
Jeff@Kurzon.com

**KURZON KOHEN LLP**
305 Broadway, FL 7
New York, NY 10007
Phone: 212-203-8918
www.Kurzon.com
Attorneys for Plaintiffs

27