UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDREW YANG, JONATHAN HERZOG, HELLEN SUH, BRIAN VOGEL, SHLOMO SMALL, ALISON HWANG, KRISTEN MEDEIROS and DR. ROGER GREEN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

DOUGLAS A. KELLNER, Co-Chair and Commissioner, ANDREW SPANO, Commissioner, PETER S. KOSINSKI, Co-Chair, TODD D. VALENTINE, Co-Executive Director, and ROBERT A. BREHM, Co-Executive Director, individually and in their official capacities at the New York State Board of Elections, and the NEW YORK STATE BOARD OF ELECTIONS,

Defendants.

No. 20-cv-3325 (AT)

**DECLARATION OF ROBERT A. BREHM**

---

**ROBERT A. BREHM** declares the following to be true and correct under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.      I serve as Co-Executive Director of the New York State Board of Elections ("State Board"). I have held this position since 2009. From 2006 to 2009, I was Deputy Director of the Public Information Office at the State Board of Elections. From 1991 to 2006 I was a commissioner of the Schenectady County Board of Elections. I am fully familiar with the facts and circumstances set forth herein. This declaration is based on my personal knowledge.

2.      The New York State's Democratic Presidential Primary was originally scheduled for April 28, 2020. The state's other primaries for offices elected in November were scheduled for June 23, 2020. *See* N.Y. Election Law § 8-100 (1). Ballot access filings for the April 28 presidential primary were completed on February 14, 2020 (last day to fill a vacancy after a declination), and the ballot was certified on March 4, 2020.

3.      As of March 4, 2020, eleven presidential candidates and several slates of
delegates pledged to candidates qualified to be on the Democratic Presidential Primary ballot.

4.      Under N.Y. Election Law § 6-160 (2) a primary is not held if the primary is not
contested.  There was no Republican Primary ballot certified because Donald Trump was the
only contesting candidate for that party's selection of delegates to the national convention.  And
there was no Libertarian presidential primary for the same reason.

5.      There is no requirement that a New York political party have a presidential
primary to select delegates to a national convention.  It is an optional primary.

6.      The Conservative Party, Working Families Party, Green Party, Independence Party
and SAM Party opted not to have a presidential primary to select delegates to a national
convention.

**DEMOCRATIC PRESIDENTIAL PRIMARY CANDIDATES EXIT RACE**

7.      Ten of the eleven candidates for the seeking delegates in New York's Democratic
Presidential primary have ceased campaigning for their party's nomination and endorsed Joe
Biden:

| CANDIDATE | CEASED CAMPAIGN | ENDORSED BIDEN |
|---|---|---|
| Michael Bennet | February 11, 2020 | April 8, 2020 |
| Andrew Yang | February 11, 2020 | March 11, 2020 |
| Deval Patrick | February 12, 2020 | March 6, 2020 |
| Pete Buttigieg | March 1, 2020 | March 2, 2020 |
| Amy Klobuchar | March 2, 2020 | March 2, 2020 |
| Tom Steyer | March 3, 2020 | April 9, 2020 |

| | | |
|---|---|---|
| Elizabeth Warren | March 5, 2020 | April 15, 2020 |
| Michael R. Bloomberg | March 4, 2020 | March 4, 2020 |
| Tulsi Gabbard | March 19, 2020 | March 19, 2020 |
| Bernie Sanders | April 8, 2020 | April 14, 2020 |

8.      Specifically, Plaintiff Andrew Yang, publicly announced on February 11, 2020 after the New Hampshire Primary:  "I am a math guy, and tonight it is clear from the numbers that we are not going to win this race…So tonight I am announcing that I am suspending my campaign." Candidate Andrew Yang also said "I am not someone who wants to accept donations and support in a race that we will not win."  *See*

https://www.nytimes.com/2020/02/11/us/politics/andrew-yang-drops-out.html. The subsequent video link of Andrew Yang's endorsement of Joe Biden on March 11, 2020 is available at: https://www.cnn.com/videos/politics/2020/03/11/andrew-yang-biden-endorsement-on-air-vpx.cnn.

9.      Friends of Andrew Yang on March 5, 2020 filed a report with the Federal Elections Commission stating "[t]his is to inform the FEC that Friends of Andrew Yang…will assume a quarterly filing schedule now that Andrew Yang is no longer an active candidate." Exhibit A.

10.      On April 8, 2020 Senator Sanders ended his campaign, leaving only Joe Biden still in the contest. Among other things Senator Sanders said this:  "I cannot in good conscience continue to mount a campaign that I cannot win and which would interfere with the important work required of all of us in this difficult hour…Today I congratulate Joe Biden, a very decent man who I will work with to move our progressive ideas forward…."

11.     By March 28, 2020, New York had become the "epicenter" of the COVID-19 epidemic with the highest number of confirmed cases and deaths in the United States as compared to all other states.

12.     As a result of the COVID-19 pandemic Governor Cuomo on March 28, 2020 issued an Executive Order providing that "[a]ny presidential primary to be held on April 28, 2020 shall be postponed and rescheduled for June 23, 2020."  N.Y. Executive Order 202.12.

**CHAPTER 56 LAWS OF 2020, PART TT**

13.     On April 3, 2020 both houses of the New York State legislature, using extraordinary procedures to avoid assembling all of their 213 members in the respective chambers amid the pandemic, passed and the governor signed Chapter 56 of the Laws of 2020.

14.     Part TT of Chapter 56 recognized that with the Democratic presidential primary having been moved by two months, there might come a point when there would no longer be a contested primary.  As of April 3, 2020, there were indeed only two candidates remaining.

15.     Chapter 56 of the Laws of 2020 thus provides "if a candidate for office of the president of the United States…publicly announces that they are no longer seeking the nomination for the office of president of the United States, or if the candidate announces that they are terminating or suspending their campaign, or if the candidate sends a letter to the state board of elections indicating they no longer wish to appear on the ballot, the state board of elections may determine…that the candidate is no longer eligible and omit said candidate from the ballot."

16.     This determination pursuant to the statute was left to the commissioners of the relevant major party – in this case the Commissioners of the Democratic Party.  *See* N.Y.

Election Law § 2-122-a (13), (14). Those commissioners are Douglas A. Kellner, Co-Chair, and Andrew J. Spano.

17.     If the presidential candidate is removed from the ballot, the related pledged delegates, if any, are likewise removed from the ballot. This provision was in the original enactment of N.Y. Election Law § 2-122 (a)(7.a), enacted in 2019.

**THE RESOLUTION OF APRIL 27, 2020**

18.     On April 27, 2020 the two Democratic Commissioners of the Board of Elections met, considered and unanimously passed a resolution, finding that "pursuant to the public declarations made by the relevant presidential candidates, the following candidates are no longer eligible as a designated Democratic Primary candidate, and their names shall be omitted from the Democratic Primary ballot: Michael Bennet, Michael R. Bloomberg, Pete Buttigieg, Tulsi Gabbard, Amy Klobuchar, Deval Patrick, Bernie Sanders, Tom Steyer, Elizabeth Warren, Andrew Yang." The Resolution is attached as Exhibit B.

19.     The meeting to make determinations pursuant to N.Y. Election Law § 2-122(a) (13) was publicly noticed on the Board's website, widely reported on in advance, and the video feed of the meeting was live streamed on the Board's website.

20.     The meeting was originally scheduled for April 22, 2020, and public notice was placed on the New York State Board of Elections website on April 20, 2020. Notice was emailed to the campaign contacts for every candidate and released to the media the same day.

21.     The meeting was postponed from April 22 to April 27, and that postponement was also posted on the Board's website.

22.      The notice sent to the campaigns stated:  "New York State Election Law § 2-122(a) provides that a determination may be made by the Democratic NYSBOE Commissioners

to remove any candidate from the presidential primary ballot who had publicly suspended their campaign. The Commissioners are holding a meeting on Wednesday, April 22, 2020 at 1 pm at the New York State Board of Elections Albany office to make a public determination pursuant to section 2-122(a) of the Election Law.  The meeting will be cast live at: LINK. Meeting notice is posted on the NYSBOE website at: https://www.elections.ny.gov/."

23.     With respect to Candidate Andrew Yang, two notices were sent before the meeting -- an email was sent to his campaign Director Chris Yum, who had previously provided his email address to the New York State Board of Elections. That email bounced back reflecting the fact that the campaign had indeed shut down.  The second Yang notice was emailed to Yang campaign's contact listed on Candidate Yang's designating petition, Howard Graubard, and that email did not bounce back.  The notice emails are attached as Exhibit C.

24.     Reflecting how widely known the meeting was, the commissioners received thousands of emails.  Among those emails was one from Jeff Kurzon, Mr. Yang's attorney in this matter, dated April 21, 2020 and time stamped 9:36 PM, indicating he would "strongly consider taking legal action" if he and Mr. Yang were removed from the ballot.  The email is attached as Exhibit D.  Notably, the email did not indicate Mr. Yang had unsuspended his campaign or even elsewise contested the election.

25.     On April 27, 2020, after the adoption of the aforesaid resolution, notice of the Commissioners' action was sent by overnight mail to all of the candidates omitted from the ballot.  That notice provided as follows:  "Earlier today the two Democratic Commissioners of the State Board of Elections passed a resolution which, under 2-122(a) of NYS Election Law, determined that ten candidates (and any National delegates pledged to such candidates) should

be removed from the Presidential Primary ballot.  The attached certification reflects these changes."  The notice is attached as Exhibit E.

26.     Pursuant to N.Y. Election Law § 16-102, this determination could be challenged in state court within three business days after the determination.  No such proceeding was brought, and the period to challenge the determination has passed.

27.     Candidate Andrew Yang at no time prior to the Commissioner's April 27 determination—or since—has indicated that has reactivated his campaign or withdrawn his endorsement of Joe Biden.

**THE PRESIDENTIAL PRIMARY DELEGATE PROCESS BELONGS TO THE PARTY**

28.     The selection of the New York State Democratic Party's delegates to the National Convention of the Party is primarily governed by the Party's rules.  N.Y. Election Law § 2-122 (a) reflect this reality as follows:

1. The rules of the state committee of a party may provide that the delegates and alternate delegates to a national convention or national party conference be elected by a combination of all of the following methods:
   a. By votes at a primary for candidates for the office of president…
   b. By votes cast at a primary election for candidates for the position of delegate and alternate delegate…
   c. By the state committee or a committee of the state committee at a meeting or convention called for such purpose…

N.Y. Election Law § 2-122(a) (1).

29.     Even now, the New York State Democratic Party is free to select its delegates in any manner by changing its rules.

30.     In any event, because New York's June 23, 2020 primary is after the June 9, 2020 deadline for primary contests under the national rules, New York's state committee may need to seek an alternative to seating a delegation at the National Convention of the Democratic Party.

The delegate selection plan is attached as Exhibit F. This is a matter in the sole province of the Democratic Party.

31.     To the extent that the New York State Democratic Committee has determined to select delegates in part at a primary election, it has done so indirectly.  In many scenarios delegates who get more votes than others do not go to the convention under the party's delegate selection plan.

32.     New York's Democratic Party presidential primary election under Election Law § 2-122(a) is first a head to head contest as between presidential candidates seeking the nomination of the Democratic Party.  The number of delegates a candidate receives is solely determined by this head-to-head match up within each congressional district. No candidate with under 15% of the vote in a district is eligible for a delegate.  These thresholds and all mechanisms for determining how the primary election translates into delegates is provided for exclusively in the Democratic Party's Delegate selection plan and is determined by the Democratic party. The New York State Board of Elections provides to the party the number of votes each candidate for president and delegates receives and the party uses those results pursuant to its rules to determine a part of its slate of delegates to the national convention.  Pursuant to N.Y. Election Law § 2-122(a) (11), the State Board of Elections is instructed that "no candidate…shall be certified as nominated or elected to any such office or position."

33.     It is not required that a presidential candidate have corresponding delegates on the presidential primary ballot.  Whether the presidential candidate has delegates on the ballot or not, the candidate will receive his or her allocation of delegates based on their respective vote totals if the vote total meets the threshold of entitlement, under the party's delegate selection plan.  A presidential candidate without delegates on the ballot if they win an entitlement to one or more

delegates will identify those delegates after the primary election in a communication directly with the State Democratic Party.  Similarly, the presidential candidate has a veto over any delegate appearing on the ballot who the presidential candidate does not want to appear.

34.  Of the eleven Democratic presidential candidates who originally qualified for the ballot, four had no delegates appearing on the ballot in any Congressional District.  Many others have incomplete slates.  A sample ballot is provided as Exhibit G.

35.    The sole purpose of the delegate portion of the ballot is to "order" the candidates *within* the candidate's own slate of delegates when later determining which one may go to the convention.  For example, if a Presidential Candidate is entitled to two delegates based on the candidate's own vote totals, the top two vote winners as among the presidential candidates delegate slate (if there is one) would be identified by the state party as delegate to the convention from the congressional district.  There is an exception, however.  Because the delegate selections must be, pursuant to party rules, gender-balanced, there are instances when a delegate who gets more votes than another on the same slate will not become a delegate so that gender balance can be achieved.  This is not at all uncommon.  All of these determinations are made by the Democratic Party, not the New York State Board of Elections.

36.    By way of further example, if a Presidential Candidate receives enough votes to be awarded all of the delegates for a congressional district, all of that candidate's delegates will go to the convention, even if among all the delegates on the ballot those delegate candidates received the fewest number of votes.  The inverse is true also.  A delegate who receives the most votes of any other delegate on the ballot will not go to the convention if the candidate he is pledged to receives insufficient votes to earn a delegate.

37.     In sum, the delegate "election" serves a purpose under the Democratic Party's Delegate Selection Plan to help "select" delegates.  The vote totals for the delegates are not dispositive of whether they will go to the convention.  A delegate candidate pledged to a candidate—as all of them are—has no ability to become a delegate to the national convention as a result of votes earned at the presidential primary independent of the vote totals earned by the presidential candidate as used by the State Committee to determine the state's delegation.

38.     The foregoing is why the delegate contest has been called "a beauty contest" for many years.  And it is why a presidential candidate need not even have a slate of delegates in order to earn delegates and, to the extent a presidential candidate does field delegates, the primary for delegate serves only to organize the candidate's slate.

**IMPACT OF HOLDING PRESIDENTIAL PRIMARY**

39.     The plaintiffs allege that holding the presidential primary makes little difference in the June 23, 2020 election because other primaries are already being held on that date.  This is entirely wrong.

*A Much Smaller Election*

40.     Absent the Democratic Presidential Primary, the number of voters for whom there is an election  on June 23, 2020 is reduced in 35 of New York's 62 counties. Seven counties would have no primaries at all absent a Democratic presidential primary, and eleven others would have entire political subdivisions within their counties with no primaries.  Four counties will see reductions in eligible voters with elections as a result of the governor cancelling seven special elections that will move from June 23, 2020 to November 3, 2020.

41.     In the aggregate, this means for the June 23, 2020 election:

- 615 fewer poll sites opened for 15 hours of in-person voting,

- 22 fewer early voting sites opened for sixty hours of early voting spanning nine days,

- 4,617 fewer poll workers needed (a population generally comprised of *at least* 55% of persons in COVID-19 vulnerable categories), and

- 1,488,715 fewer eligible voters with an election on June 23, 2020.

42.     Preparing for and holding the June 23, 2020 primary to decide actual contests is going to be a significant challenge in the context of the Pandemic, and the holding of a presidential primary could strain the system to the point of buckling.

43.     Entirely new protocols for the voting must be defined and administered regarding social distancing to avoid COVID-19 transmission.

44.     While the election is not until June 23, 2020, the work to prepare for it, much of which is not consistent with social distancing must be done beginning now.  The deadline for county boards of elections to certify the ballot was April 30, 2020.   Under state and federal law, military and overseas ballots must be printed and ready to send out 46 days before the date of the election which is May 9, 2020.  Boards of elections are diligently working toward that objective.

45.     In New York City, the Board of Elections' 800 employees are disproportionately older, with half of the employees having been identified by employee representatives as over sixty years of age.

46.     As of April 21, 2020, CWA Local 1183, the union that represents those workers, reported three deaths among their members, 29 members diagnosed with COVID-19 and a dozen more with symptoms who were untested.

47.     Significantly more absentee ballots will need to be mailed and processed due to changes in entitlement owing to the pandemic (Executive Order 202.13).  In the 2016 election, about 6% of ballots were cast by absentee.  In 2020 it is expected this percentage will increase many fold.

48.     Securing suitable poll sites and retaining and protecting poll workers is presently a greater challenge than at any time of memory.

49.     County boards of election across New York are not fully functional and are not at capacity owing to social distancing requirements that are not easily consistent with the work of programming and testing voting machines.

50.     Conducting a presidential primary which is not necessary under state law as well as the state, local and congressional primaries that are needed for selection of candidates in contested races in the midst of the pandemic is a great burden.

51.     In terms of monetary costs, the New York State Board estimates conservatively that holding the unnecessary presidential primary will result in the following additional costs, totaling $5.6 million:

| | |
|---|---|
| $372,250 | Poll site set up costs |
| $148,900 | Additional voting machine testing and preparation |
| $1,269,675 | Poll worker expenses |
| $855,000 | Ballots |
| $2,976,000 | Absentee and mailing costs |

52.     Plaintiffs suggest safe voting can be provided for by simply moving the election to all mail.  Efforts are indeed underway to move as much voting as possible to mail.  But not all voting can be moved to mail, and conducting an unnecessary presidential primary election by

mail endangers the success of the necessary contests in which actual governing choices need to be made.

53.     New York has made all voters eligible to vote by mail upon application and is sending absentee ballot applications to all voters eligible to participate in the June 23, 2020 primary with a postage paid return envelope.  While this will lessen the in person number of voters, we simply do not know by how much.

54.     Many voters may desire to vote in person on Election Day or may simply forget to apply for an absentee ballot they could have requested, and as such many voters will *need* to vote in person.  This group additionally includes:  A voter who does not receive a ballot in the mail despite having requested it; a voter in need of assistance in the voting process; and a voter who has not changed their voting residence with the Board of Elections and has moved within the state, and is eligible to cast a valid affidavit ballot at in-person voting.

**DEMOCRATIC PARTY STATE COMMITTEE**

55.      The New York State Board of Elections provides the results of a Democratic Party presidential primary election to the New York State Democratic Party.  The party uses those results pursuant to its rules to determine who goes to the convention as a delegate.

56.     On April 30, 2020, the Biden and Sanders campaign issued a statement requesting that every state party allocate delegates in a particular manner.  In that memorandum, the two campaigns said "the campaigns are aware of the New York Board of Elections decision not to hold a presidential primary, and if the state remains eligible for delegates, the campaigns are committed to working together to ensure representation for Senator Sanders in the New York delegation."  Biden and Sanders Memorandum dated April 30, 2020.

57.     The forgoing demonstrates that the state and national parties have the ability and indeed the right to determine who is seated as a delegate at its convention for the purpose of selecting a national nominee. And it is ultimately the party's process, not the State's

## SELECTING DELEGATES TO NATIONAL CONVENTION DOES NOT PUT CANDIDATES ON THE NOVEMBER BALLOT

58.     Whomever the national nominee of the party may be, that person does not attain access to New York's November General Election ballot as a result of the presidential primary. A national convention may, and at times has, selected a nominee who was not the choice of New York presidential primary voters.  The actual placement of electors for president on the November ballot does not happen at the national convention. Rather this occurs much later at a meeting of the New York State Committee by vote of the state committee, typically in September after the national convention has adjourned.  *See* N.Y. Election Law § 6-102 ("[p]arty nominations of candidates for the office of elector of president and vice president of the United States, one for each congressional district and two at large, shall be made by the state committee."); 6-158.  The state committee is distinct from the delegates to the national convention, and the national convention delegates play no role in the actual state nominating process that places the electors' names on the November ballot.


Dated:  Albany, New York
        May 1, 2020


                                        /s/


                                        _____

                                        ROBERT A. BREHM