UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

Andrew Yang, Jonathan Herzog, Hellen Suh, Brian Vogel, Shlomo Small, Alison Hwang, Kristen Medeiros, and Dr. Roger Green, *individually and on behalf of all others similarly situated*,

     *Plaintiffs*,

-and-

George Albro, Penny Mintz, Jay Bellanca, Traci Strickland, Emily Adams, Nestor Medina, Simran Nanda, Kathryn Levy, Joshua Sauberman, Cari Gardner, Stephen Carpineta, Ting Barrow and Nancy de Delva,

     *Proposed Plaintiff-Intervenors,*

-against-

Douglass Kellner and Andrew Spano, *As Commissioners of the New York State Board of Elections*, and The New York State Board of Elections,

     *Defendants*

-and-

Andrew Cuomo, *As Governor of the State of New York*

20-cv-03325 (AT)

# PROPOSED PLAINTIFF-INTERVENORS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO INTERVENE

Elena L. Cohen
J. Remy Green
Jonathan Wallace, *of counsel*
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, New York 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
elena@femmelaw.com

Arthur Z. Schwartz

**ADVOCATES FOR JUSTICE**

*Attorneys for Proposed Plaintiff-Intervenors*

May 1, 2020


## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY AND FACTUAL STATEMENT ...................................................................... 1

ARGUMENT ................................................................................................................................. 2

    I.   The Sanders Plaintiffs Should be Granted Intervention as of Right Pursuant to Federal Rule of Civil Procedure 24(a). ......................................................................... 2

        A.   The motion is timely. ........................................................................................ 2

        B.   The Sanders Plaintiffs have substantial interests that may be impaired by disposition of this case. ............................................................................................. 4

        C.   The Sanders Plaintiffs' interests are not fully or adequately represented by the existing Plaintiffs. ....................................................................................................... 6

    II.   In the Alternative, Permissive Intervention Is Appropriate. ......................................... 9

CONCLUSION ............................................................................................................................ 11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Brennan v. N.Y.C. Bd. of Educ.*,
    260 F.3d 123 (2d Cir. 2001) ............................................................................................. 2, 4, 6, 8

*Brumfield v. Dodd*,
    749 F.3d 339 (5th Cir. 2014) ..................................................................................................... 4

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
    250 F.3d 171 (2d Cir. 2001) ....................................................................................................... 6

*Commack Self-Serv. Kosher Meats, Inc. v. Rubin*,
    170 F.R.D. 93 (E.D.N.Y. 1996) ................................................................................................ 4

*Donaldson v. United States*,
    400 U.S. 517 (1971) ................................................................................................................. 4

*Dow Jones & Co.*,
    161 F.R.D. ................................................................................................................................ 3

*Dow Jones & Co. v. U.S. Dep't of Justice*,
    161 F.R.D. 247 (S.D.N.Y. 1995) .............................................................................................. 2

*Eddystone Rail Co. v. Jamex Transfer Servs.*,
    289 F. Supp. 3d 582 (S.D.N.Y. 2018) ...................................................................................... 9

*Floyd v. City of New York*,
    770 F.3d 1051 (2d Cir. 2014) ................................................................................................... 2

*Great Atl. & Pac. Tea Co. v. Town of E. Hampton*,
    178 F.R.D. 39 (E.D.N.Y. 1998) ................................................................................................ 4

*Herdman v. Town of Angelica*,
    163 F.R.D. 180 (W.D.N.Y. 1995) ............................................................................................. 4

*Hill Phx., Inc. v. Systematic Refrigeration, Inc.*,
    117 F. Supp. 2d 508 (E.D. Va. 2000) ........................................................................................ 8

*Libertarian Party of Conn. v. Bysiewicz*,
    No. 3:08-CV-1513 (JCH), 2008 U.S. Dist. LEXIS 97970, at *3-4 (D. Conn. Dec.
    2, 2008) ................................................................................................................................. 8, 9

*McNeill v. N.Y.C. Hous. Auth.*,
    719 F. Supp. 233 (S.D.N.Y. 1989) ............................................................................................ 9

*Mortg. Lenders Network, Inc. v. Rosenblum,*
  218 F.R.D. 381 (E.D.N.Y. 2003) ..............................................................................3

*N.J. Carpenters Health Fund v. Residential Capital, LLC,*
  No. 08 CV 8781 (HB), 2010 U.S. Dist. LEXIS 135261, at *17 (S.D.N.Y. Dec. 21,
  2010) ........................................................................................................................7

*N.Y. Pub. Interest Research Grp. v. Regents of Univ. of N.Y.,*
  516 F.2d 350 (2d Cir. 1975) (*per curiam*) .............................................................4

*In re National Australia Bank,*
  No. 03 Civ. 6537, 2006 U.S. Dist. LEXIS 94163, 2006 WL 3844463 (S.D.N.Y.
  Nov. 8, 2006) ...........................................................................................................7

*New York v. Pruitt,*
  Nos. 18-CV-1030, 18-CV-1048, 2018 WL 1684341 (S.D.N.Y. Apr. 5, 2018) .......9

*Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.),*
  Nos. MDL-1446, H-01-3624, 2004 U.S. Dist. LEXIS 8158, at *31 n.24 (S.D.
  Tex. Feb. 24, 2004) ..................................................................................................7

*Olin Corp. v. Lamorak Ins. Co.,*
  325 F.R.D. 85, 87 (S.D.N.Y. 2018) .........................................................................9

*Republic of the Philippines v. Abaya,*
  312 F.R.D. 119 (S.D.N.Y. 2015) .............................................................................3

*Sherman v. Town of Chester,*
  339 F. Supp. 3d 346 (S.D.N.Y. 2018) ...............................................................2, 3, 6

*Town of Chester v Laroe Estates, Inc.,*
  137 S Ct 1645, 1648 (2017) ....................................................................................6

*Trbovich v. UMW,*
  404 U.S. 528 (1972) .................................................................................................6

*U.S. Postal Serv. v. Brennan,*
  579 F.2d 188 (2d Cir. 1978) ...............................................................................9, 10

*United States v. Columbia Pictures Indus., Inc.,*
  88 F.R.D. 186 (S.D.N.Y. 1980) ...............................................................................9

**Other Authorities**

7C Charles Alan Wright, et al., <u>Federal Practice and Procedure</u> § 1908.1 (3d ed. 2019) ........4

7C Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 1909 (3d ed.
  2019) ........................................................................................................................6

Fed. R. Civ. P. 24......................................................................................................................2, 3, 4, 5

Fed. R. Civ. P. 24(a) ..............................................................................................................2, 4, 6, 11

Fed. R. Civ. P. 24(b).....................................................................................................................2, 8, 9

https://projects.fivethirtyeight.com/polls/president-primary-d/new-york/ ...........................................7

J. Moore, FEDERAL PRACTICE ¶ 24.09-1 [4] (1969).......................................................................6

Tal Axelrod, "Biden campaign seeks to let Sanders keep his delegates in unusual
    move," THE HILL (April 17, 2020), available at
    https://thehill.com/homenews/campaign/493454-biden-campaign-seeks-to-let-
    sanders-keep-his-delegates-inunusual-move/ .................................................................................5

**PRELIMINARY AND FACTUAL STATEMENT**

The Proposed Plaintiff-Intervenors ("Sanders Plaintiffs") file[1] this Memorandum of Law[2] in support of their Motion to Intervene in order to ensure that adjudication of this case considers the full array of vested electoral and Constitutional interests at stake, and to make sure those interests and related rights are fully and vigorously defended.

As more fully set out in the attached Complaint in Intervention ("IC"), this action concerns the unprecedented and undemocratic actions of the Defendant New York Board of Elections, as well as the *ex post facto* passage and use of a law that allowed the Defendant to take away the vested electoral and constitutional interests and rights of people like the initially named Yang Plaintiffs and the Sanders Plaintiffs.

Moreover, Sanders' campaign "suspension" – notably Sanders has never officially terminated his candidacy with the Federal Election Commission, and absent the change in law, could not have removed his name from the ballot if he wanted to – was done both (1) during the current Coronavirus emergency *and* (2) (necessarily) without notice of the *ex post facto* law that the Board of Elections would use to remove him from *some* ballots.  *See* IC ¶¶ 41-48 (some absentee ballots have already been sent out that still have the intervenor Delegate candidates on them).  This combination works an injustice particular to Sanders and his delegates, as the quasi-suspension was a carefully calculated balance between the real dangers of the present pandemic on one hand, and both the chance to actual win the Democratic nomination and the opportunity to use convention delegates to achieve policy goals and concessions on the other.  Thus, Sanders' ultimate suspension *always*

---

[1] Pursuant to the Court's Individual Practices III(A)(i), given that all parties involved in this case agree that delay can result in prejudice to all involved (*see e.g.*, the Court's Order at ECF No. 5, Defendants' motion at ECF No. 4), the Sanders Plaintiffs submit that this motion does not require a pre-motion letter as any delay in filing might result in the loss of a right.

[2] As a source note, because of the urgent nature of the case and the short time available, this briefing borrows heavily and adapts from the briefing submitted on a similar issue by the ACLU, NYCLU, NAACP, and LatinoJustice PRLDE in McAuliffe v. De Blasio, 18-cv-11657 (ER) (ECF No. 87-1), *motion granted at* ECF No. 124.

anticipated that New York Election Law would function the same way it has for more than a century: once a candidate has been nominated, it is virtually impossible to be removed from the ballot, "however reasonable [the reason for removal] might appear." *Matter of Biamonte v Savinetti*, 87 A.D.3d 950, 954 (2nd Dept. 2011) (where "the affidavits submitted by Jones, Kennedy, MacKenzie, and Williams, purporting to decline the designations and nominations, failed to constitute an effective disqualification," candidates "name[s] must remain on the ballot"); *Matter of Harper v New York State Bd. of Elections*, 823 N.Y.S.2d 297, 299 (3d Dept. 2006) (candidates who declined a nomination by a letter post marked more than three days after being nominated *must* remain on the ballot); ECF No. 7(12) (letter from Sanders campaign, explaining intent and expectation to remain on the ballot).

For further factual background and economy of space, the IC is incorporated by reference.

## ARGUMENT

Rule 24 permits a party to intervene in ongoing right as of right (Rule 24[a]) or by permission (Rule 24[b]). Intervention is proper under either and both of these standards.

### I. The Sanders Plaintiffs Should be Granted Intervention as of Right Pursuant to Federal Rule of Civil Procedure 24(a).

Rule 24 provides that "the [C]ourt **must** permit anyone to intervene" if that person "(1) timely file[d] an application, (2) show[ed] an interest in the action, (3) demonstrate[d] that the interest may be impaired by the disposition of the action, and (4) showed that the interest is not protected adequately by the parties to the action." Fed. R. Civ. P. 24(a) (emphasis added); *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128-29 (2d Cir. 2001) (cleaned up); *see also Sherman v. Town of Chester*, 339 F. Supp. 3d 346, 358 (S.D.N.Y. 2018).

#### A. The motion is timely.

There is no "hard and fast rule defining timeliness under Rule 24(a)," and the Court instead should make a "ruling be based on all the circumstances of the case." *Dow Jones & Co. v. U.S. Dep't*

*of Justice*, 161 F.R.D. 247, 251 (S.D.N.Y. 1995).  In the Second Circuit such circumstances include: "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Floyd v. City of New York*, 770 F.3d 1051, 1058 (2d Cir. 2014), *citing MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 390 (2d Cir. 2006).

Timeliness is generally measured – in admittedly different circumstances – in months (if not years).  *See, e.g., Republic of the Philippines v. Abaya*, 312 F.R.D. 119, 123 (S.D.N.Y. 2015) (finding motion was timely where the intervenor waited "nearly a year to intervene in the action"); *Dow Jones & Co.*, 161 F.R.D. at 251–53 (motion was timely, even after grant of summary judgment); *Mortg. Lenders Network, Inc. v. Rosenblum*, 218 F.R.D. 381, 383–84 (E.D.N.Y. 2003) (motion was timely, even where filed more than six months after the intervenors knew or should have known of their interest in the litigation).

Here, the intervenors have sought to intervene within three days of the filing of the Yang Plaintiffs' complaint, and within four days of the action being challenged.  Moreover, the Court has not changed any deadline (ECF No. 14) and no party's rights will be prejudiced by the intervention of the Sanders Plaintiffs.[3]  Often, prejudice is discussed with reference to how much discovery has taken place where – here – none has.  *See, e.g.*, *Sherman*, 339 F. Supp. 3d at 359 (motion is timely where "the parties have not even begun discovery" even with a long delay in filing).  While the Sanders Plaintiffs first sought a delay of one day, the Court found a solution that kept the same scheduled hearing and no further delay of proceedings will be sought.  Finally, as described below, Sanders Plaintiffs have interests that may be impaired by the disposition of this litigation and may

---

[3] To that end, in at least some senses, the Defendants would be prejudiced by *denial* of the motion:  they would ultimately have to litigate two separate cases.

suffer prejudice if they cannot intervene, and judicial economy is served by resolving all disputes relating to the Board's actions in one litigation.

> B. The Sanders Plaintiffs have substantial interests that may be impaired by disposition of this case.

In the Second Circuit, the nature of the "interest" required under Rule 24 is defined as an interest that is "direct, substantial, and legally protectable[,]" rather than "remote from the subject matter of the proceeding, or . . . contingent upon the occurrence of a sequence of events[.]" *Brennan*, 260 F.3d at 129, *quoting Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990); *accord Donaldson v. United States*, 400 U.S. 517, 531 (1971) (requiring "significantly protectable interest"); *see also N.Y. Pub. Interest Research Grp. v. Regents of Univ. of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (*per curiam*) (pharmacists permitted to intervene in action challenging advertising of prescription drug prices); *Great Atl. & Pac. Tea Co. v. Town of E. Hampton*, 178 F.R.D. 39, 42 (E.D.N.Y. 1998) (environmental organization dedicated to preserving the rural character of a town had interests that "would likely be impaired" at stake). *See also, generally*, Fed. R. Civ. P. 24 (advisory committee's note) ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene[.]").

Interests protected by a constitutional provision or statute of general application are construed broadly and are particularly likely to warrant intervention, especially when the lawsuit raises a question of public interest. "The Supreme Court has recognized that 'certain public concerns' may constitute an adequate 'interest' within the meaning of [Rule 24(a)(2)].'" *Herdman v. Town of Angelica*, 163 F.R.D. 180, 187 (W.D.N.Y. 1995) *quoting Diamond v. Charles*, 476 U.S. 54, 68 (1986) (bracketing in original). This Court, therefore, must "take into account both the public nature" of the instant litigation "and the basis for, and strength of, [the Sanders Plaintiffs'] particular interest in the outcome of the litigation." *Id.*; *accord Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170

4

F.R.D. 93, 100 (E.D.N.Y. 1996); *see also, e.g.*, *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) ("The interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group.  The zone of interests protected by a constitutional provision or statute of general application is arguably broader than are the protectable interests recognized in other contexts.") (citations omitted); 7C Charles Alan Wright, et al., Federal Practice and Procedure § 1908.1 (3d ed. 2019) ("[I]n cases challenging various statutory schemes as unconstitutional or as improperly interpreted and applied, the courts have recognized that the interests of those who are governed by those schemes are sufficient to support intervention.").

In short, without the Court's intervention, the Sanders Plaintiffs will be removed from the ballot[4] by fiat.  Those 184 people – representing between them the signatures of nearly 60,000 registered voters – have a vested, well-established interest in being on the ballot.  Indeed, part of the bargain struck between the Biden campaign and the Sanders campaign explicitly focused on this.  As one Biden official put it, ""We feel strongly that it is in the best interest of the party to ensure that the Sanders campaign receives statewide delegates to reflect the work that they have done to contribute to the movement that will beat Donald Trump this fall … We are in discussion with them now on how to best accomplish that." Tal Axelrod, "Biden campaign seeks to let Sanders keep his delegates in unusual move," THE HILL (April 17, 2020), available at https://thehill.com/homenews/campaign/493454-biden-campaign-seeks-to-let-sanders-keep-his-delegates-inunusual-move/.

This "best interest of the party" and "reflect[ion] of the work" the delegates and the candidate they are pledged to represent is, without doubt, an interest in the outcome of the litigation.

---

[4] As noted above, the Defendants' decision makes something of a mess of the ballot as well, since absentee ballots that include the Democratic presidential candidates have already been issued and in some instances completed and returned.  Notably, Board-of-Election-Defendants in cases of this kind ordinarily assert that once the first absentee ballot has been printed, it is *impossible* to change the ballot, relying on cases finding a state interest in the orderly procession of elections.

Given the gravity of the constitutional concerns, judicial economy (amid a pandemic), and the divergent nature of the interests at stake, the interests of the Sanders Plaintiffs in the resolution of this case comfortably satisfies Rule 24.

Accordingly, the Sanders Plaintiffs have a significant interest in the instant litigation.

### C. The Sanders Plaintiffs' interests are not fully or adequately represented by the existing Plaintiffs.

Finally, intervention as of right is warranted because the Sanders Plaintiffs' interests are not "adequately represent[ed]" by "the existing parties." Fed. R. Civ. P. 24(a)(2); *see also Sherman*, 339 F. Supp. 3d at 360, *citing Laroe Estates, Inc. v. Town of Chester*, 828 F.3d 60, 67 (2d Cir. 2016), *rev'd and remanded on other grounds in Town of Chester v Laroe Estates, Inc.*, 137 S Ct 1645, 1648 (2017). Courts grant intervention as of right under this factor unless the interests of existing parties are "so similar to those of [Intervenors] that adequacy of representation [is] **assured**." *Brennan*, 260 F.3d at 132–33 (emphasis added).

The burden on this factor is minimal. A proposed intervenor has the burden to show that adequacy of representation is not assured and there is an initial presumption of adequecy. *See Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179–80 (2d Cir. 2001). However, "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest '**may** be' inadequate; and the burden of making that showing **should be treated as minimal**." *Trbovich v. UMW*, 404 U.S. 528, 538 n.10 (1972) (emphasis added), *citing* 3B J. Moore, FEDERAL PRACTICE ¶ 24.09-1 [4] (1969). 7C Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 1909 (3d ed. 2019) (an applicant ordinarily should be permitted to intervene as of right "unless it is clear that the party will provide adequate representation for the absentee."). The Second Circuit has not precisely defined what is necessary to meet this minimal burden. *See Butler*, 250 F.3d at 180 (holding that, while "not an exhaustive list, . . . evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy.").

Here, the Sanders Plaintiffs are positioned to make arguments – or respond to challenges from the Defendants – in ways that the Yang Plaintiffs cannot. First, Defendants are likely to make viability and related standing arguments regarding Yang and his Delegates. That is, Defendant may make the short hop from their signaled argument that Andrew Yang "cannot show any harm or injury given his acknowledged suspension of his campaign and his public endorsement of Joe Biden" to the argument that it would be impossible for Andrew Yang to show any harm even without such a suspension.[5] While Sanders spent significant time as the Democratic Party frontrunner and traded paint with Biden as the polling leader in New York, Andrew Yang consistently polled between 1-4% overall.[6]

Relatedly, Defendants will likely make *Twombly/Iqbal* plausibility arguments relating to the Yang Delegate-Plaintiff's ultimate right to represent their candidate at the national convention (e.g., "The claim that Yang Delegates would win the right to attend the convention is not plausible."). Because the 2020 Delegate Selection Plan of the New York State Democratic Committee provides that "a Presidential Candidate who fails to receive the 15% threshold percentage of the vote statewide shall not receive any delegates or alternates," though the argument is speculative, Defendants could at least colorably argue that Yang's delegates were unlikely to actually appear at the convention. IC Ex. __ at 9. By contrast, there is no question that if the election were held, many of Sanders' delegates would attend the convention. Given that, adding the Sanders Plaintiffs cures a potential standing defect and allows this dispute to be resolved on its merits. *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 CV 8781 (HB), 2010 U.S. Dist. LEXIS 135261, at *17

---

[5] This argument seem particularly likely given the nature of the claims about the *ex post facto* passage of the relevant law: suspending a campaign, at the time each Yang and Sanders did so, did not – and under New York law, *could not* – lead to removal from a ballot. By design, the Democratic primary system allocates power to candidates and their political coalitions *even when they lose the primary*. Thus, Sanders' campaign has been clear that they intended to remain in the race and collect delegates. *See, e.g.*, Yang Complaint, Exhibit L.

[6] *See* https://projects.fivethirtyeight.com/polls/president-primary-d/new-york/.

7

(S.D.N.Y. Dec. 21, 2010) (S.D.N.Y. cases[7] "suggest that a plaintiff may be added to cure standing defects in certain situations"). *See also, e.g., Hill Phx., Inc. v. Systematic Refrigeration, Inc.*, 117 F. Supp. 2d 508, 515 (E.D. Va. 2000) ("In view of the fact that the intervention of DCF would cure the standing defect [and a lack of prejudice] … the court finds that intervention here is warranted").

Finally, while the Yang Plaintiffs have cured the latent Eleventh Amendment defect in their initial pleading (*see, e.g.*, ECF Nos. 4, 9-11), there may be more that must be addressed. *See for example, Libertarian Party of Conn. v. Bysiewicz*, No. 3:08-CV-1513 (JCH), 2008 U.S. Dist. LEXIS 97970, at *3-4 (D. Conn. Dec. 2, 2008) ("I was particularly concerned, as I noted at that conference, that there was no Motion for a Preliminary Injunction accompanying the complaint. I was concerned it had either been misplaced or misdocketed by the Clerk's Office and that, in fact, if there was a motion, that I should be attending to. Of course, the Court cannot act without a motion. Federal Rule of Civil Procedure 7(b) states that a request for a court order which would, of course, be what the preliminary injunction is, must be made by motion."). Given these issues, without intervention, protection of the interests of the Sanders Plaintiffs is not "assured." *Brennan*, 260 F.3d at 132–33.[8]

In sum, the distinctions in positioning, interest, and rights are enough to show that the Sanders Plaintiffs' interests are not adequately represented by the Yang Plaintiffs alone. *See also*, ECF No. 15 at 5 (Yang Plaintiffs arguing that "the more voices that are heard the better to protect

---

[7] *Citing In re Initial Public Offering Sec. Litig*, No. 21 MC 92SAS, 01 Civ. 9741, 01 Civ. 10899 (SAS), 2004 U.S. Dist. LEXIS 26000, 2004 WL 3015304, at *4-6 (S.D.N.Y. Dec. 27, 2004); *In re National Australia Bank*, No. 03 Civ. 6537, 2006 U.S. Dist. LEXIS 94163, 2006 WL 3844463, at *5 (S.D.N.Y. Nov. 8, 2006). Notably, this issue far more often arises in the class action context where a class representative has been found inadequate so late in the day that the statute of limitations has run. *See discussion in Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, Nos. MDL-1446, H-01-3624, 2004 U.S. Dist. LEXIS 8158, at *31 n.24 (S.D. Tex. Feb. 24, 2004). Here, however, the obvious alternative is that the Sanders Plaintiffs – as is their right – will simply bring separate litigation (which counsels in favor of both intervention as of right and permissive intervention, given the benefit to judicial economy).

[8] To be clear, a complaint filed a *single day* after a challenged, unconstitutional action was taken, amidst a global pandemic, does not show "incompetence" or "nonfeasance" in a sense that reflects anything other than the truly extraordinary circumstances at work.

our democracy and right to vote"). For these reasons, the Sanders Plaintiffs' presence is necessary to adequately represent their interests

## II. In the Alternative, Permissive Intervention Is Appropriate.

Under Rule 24(b), this Court may, in its discretion, "permit anyone to intervene" provided they (1) file a "timely motion," and (2) "ha[ve] a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). The "principal consideration" is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) (quotation omitted); *Eddystone Rail Co. v. Jamex Transfer Servs.*, 289 F. Supp. 3d 582, 595 (S.D.N.Y. 2018) (*citing U.S. Postal Serv.*).

Rule 24(b) "is to be liberally construed" in favor of intervention. *Olin Corp. v. Lamorak Ins. Co.,* 325 F.R.D. 85, 87 (S.D.N.Y. 2018), *quoting Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 407 (S.D.N.Y. 2006); *see also McNeill v. N.Y.C. Hous. Auth.*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989).

Courts may also consider other factors, including "'the nature and extent of the intervenors' interests' . . . and 'whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *U.S. Postal Serv.*, 579 F.2d at 191-92, *quoting Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977). Courts may also consider whether their interests are "adequately represented by the other parties," but this "is clearly a minor factor at most." *United States v. Columbia Pictures Indus., Inc.*, 88 F.R.D. 186, 189 (S.D.N.Y. 1980); *see also New York v. Pruitt*, Nos. 18-CV-1030, 18-CV-1048, 2018 WL 1684341, at *1 (S.D.N.Y. Apr. 5, 2018) (considering adequacy just one of several factors to be considered, but not required, and ultimately declining to reach mandatory intervention because of a grant of permissive intervention).

Permissive intervention is appropriate here. First, this motion is timely for the reasons outlined above. Second, the claims of the Sanders Plaintiffs and those of the Yang Plaintiffs share questions of fact and law, and seek largely the same relief.[9]

Critically, Sanders Plaintiffs' claims would not "unduly delay or prejudice the adjudication of the rights of the original parties." *U.S. Postal Serv.*, 579 F.2d at 191. The Court has already ordered a schedule for resolution of the entire case, with which the Sanders Plaintiffs will comply. And although adequacy of representation is a far less significant consideration for permissive intervention, this Court can consider, as argued above, that the interests of the Sanders Plaintiffs are not "adequately represented" by the Yang Plaintiffs. *Id.* (internal quotation marks omitted); *see also supra* Section I.C.

Finally, as also discussed above, the Sanders Plaintiffs present a critical piece of the puzzle. The Yang Plaintiffs have emphasized the rights of the Sanders Delegates in their briefing and complaints. *See generally,* ECF No. 15; *see also*, ECF No. 7 ¶¶ 6, 56-7, 69-70, 76; ECF No. 7-12. The Sanders Plaintiffs include members and chairs of Democratic Committees from across the State, and active participants in political life with decades of experience in State Democratic politics. Their personal knowledge of the decision making process, general practices of the Board, and experience both in cooperating and fighting the decisions of that Board makes their participation a benefit to the Court.

The Sanders Plaintiffs thus bring unique knowledge, experience, and expertise that will aid in the just, effective, and efficient adjudication of this case.

---

[9] The Sanders Plaintiffs propose variations in form on an injunction, and also intend to formally request a preliminary injunction, which the Yang Plaintiffs have not done. *See, e.g., Libertarian Party of Conn.*, *supra*. However, the *gravamen* of the relief sought is the same: reverse the sudden, *ex post facto*, and unconstitutional termination of an entire election by Defendants.

## **CONCLUSION**

For the foregoing reasons, Proposed Intervenors respectfully request that this Court grant their Motion to Intervene, pursuant to Federal Rule of Civil Procedure 24(a) or 24(b).

Respectfully submitted,

/s/ J. Remy Green
_____
Elena L. Cohen
J. Remy Green
Jonathan Wallace, *of counsel*
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, New York 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com
elena@femmelaw.com


Arthur Z. Schwartz
**ADVOCATES FOR JUSTICE**
225 Broadway, Suite 1902
New York, NY 10007
aschwartz@afjlaw.com