**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

Andrew Yang, Jonathan Herzog, Hellen Suh, Brian Vogel,
Shlomo Small, Alison Hwang, Kristen Medeiros and Dr. Roger
Green, *individually and on behalf of all others similarly situated*,

                    *Plaintiffs*,

     -and-

George Albro, Jay Bellanca, Traci Strickland, Emily Adams,
Nestor Medina, Simran Nanda, Kathryn Levy, Joshua
Sauberman, Cari Gardner, Stephen Carpineta, Ting Barrow,
Penny Mintz, and Nancy de Delva,

                    *Proposed Plaintiff-Intervenors*,

     -against-

Douglas Kellner, *in his official capacity*, Andrew Spano, *in his official
capacity*, and the New York State Board of Elections,

     -and-

Governor Andrew Cuomo, *as Governor of the State of New York*

                    *Defendants*.

20-cv-03325 (AT)

---

**PROPOSED PLAINTIFF-INTERVENORS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR PRELIMINARY INJUNCTION
AND IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION**

---

Elena L. Cohen
J. Remy Green
Jonathan Wallace, *of counsel*
**COHEN&GREEN P.L.L.C.**

Arthur Z. Schwartz, Esq.
**ADVOCATES FOR JUSTICE**

*Attorneys for Proposed Plaintiff-Intervenors*

May 1, 2020

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................i

TABLE OF AUTHORITIES ............................................................................................iii

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL & PROCEDURAL HISTORY .......................................................................2

ARGUMENT ......................................................................................................................2

I.    A Mandatory Injunction is the Appropriate Remedy to Redress the Deprivation of the Sanders Plaintiffs' Rights...........................................................................................2

II.   The Yang Plaintiffs' and the Sanders Plaintiffs' Claims Will Succeed on the Merits.................4

    A.    Section 2-122-A(13) is unconstitutional as applied. ..................................................4

        i.    Section 2-122-A(13) is an unconstitutional deprivation of the right of access to the ballot under either Anderson-Burdick or strict scrutiny...........................................4

        ii.    Section 2-122-A (13) Should Not Have Been Applied Retroactively to Candidates Who Were Duly Qualified Prior To Its Enactment and Such a Retroactive Application is Unconstitutional .....................................................................................................8

    B.    Section 2-122-A(13) is an Unconstitutionally Vague Delegation of Authority...................9

    C.    The Board's Decision Was Arbitrary, Capricious, and an Abuse of Discretion...............10

        i.    The Board's decision was contrary to law because the statute did not authorize the Board to remove candidates against their will ..............................................................11

        ii.    The Board's Decision Was Arbitrary and Capricious and Contrary to Law Because the Grounds on which It Rests Are Improper .............................................................15

    D.    Defendants' Signaled Arguments Lack Merit. .......................................................17

III.    The Balance of the Equities Weighs in Favor of Injunctive Relief and Irreparable Harm is

Presumed. ........................................................................................................................................20

CONCLUSION.........................................................................................................................................22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v Imm*,
  32 Misc. 3d 1245(A) (Sup. Ct. Nassau Cty. 2011) ................................................................11

*Allen v. State Bd. of Elections*,
  393 U.S. 544 (1969) ..................................................................................................................4

*and Gonsalves v. N.Y. State Bd. of Elections*,
  974 F. Supp. 2d 191 (E.D.N.Y. 2013) ....................................................................................18

*and Turner Broad. Sys., Inc. v. FCC*,
  512 U.S. 622 (1994) ..................................................................................................................6

*Anderson v. Celebrezze*,
  460 U.S. 780, 789 (1983) ..........................................................................................................6

*Anghel v. N.Y. State Dep't of Health*,
  947 F. Supp. 2d 284, 298, No. 12-CV-3484, 2013 WL 2338153, at *9 (E.D.N.Y.
  May 29, 2013) ..........................................................................................................................17

*Matter of Anonymous v. Commissioner of Health*,
  21 A.D.3d 841 (1st Dept 2005) ..............................................................................................10

*Baca v. Colo. Dep't of State*,
  935 F.3d 887 (10th Cir. 2019) ..................................................................................................2

*Matter of Biamonte v Savinetti*,
  87 A.D.3d 950 (2nd Dept. 2011) ..............................................................................................2

*Brown v. Dean*,
  555 F Supp 502 (DRI 1982) ...............................................................................................18, 19

*California Democratic Party v. Jones*,
  30 US 567, 573-9 (2000) ...........................................................................................................5

*Chou v. N.Y. State Bd. of Elections*,
  332 F. Supp. 2d 510 (E.D.N.Y. 2004) ....................................................................................18

*Clinton v. City of N.Y.*,
  524 U.S. 417 (1998) ................................................................................................................10

*Corley v. United States*,
  556 U.S. 303 (2009) ................................................................................................................12

*Council of City of N.Y. v. Giuliani,*
  93 N.Y.2d 60, 710 N.E.2d 255 (1999) ................................................................12

*Credico v. N.Y. State Bd. of Elections,*
  751 F. Supp. 2d 417 (E.D.N.Y. 2010)....................................................18, 19, 20

*Credico v. New York State Bd. Of Elections,*
  2013 US Dist. LEXIS 109737 at *71-72 (EDNY 2013), 10-cv-4555-(RJD)-(CLP)....................1, 7

*Matter of D.F. v. Gladys Carrion,*
  43 Misc. 3d 746 (Sup. Ct. N.Y. Cty. 2014) .......................................................16

*Fernandez-Vargas v. Gonzales,*
  548 U.S. 30 (2006)..............................................................................................8

*Gardiner v. Stanley Orchards, Inc.,*
  105 Misc. 2d 460 (Supreme Court Ulster County 1980) ...................................10

*Green Party v. N.Y. State Bd. of Elections,*
  389 F.3d 411 (2d Cir. 2004)........................................................................*passim*

*Green Party v NY State Bd. of Elections,*
  389 F3d 411 (2d Cir. 2004) .................................................................................6

*Hadnott v. Amos,*
  394 U.S. 358 (1969)............................................................................................4

*Hamdan v. Rumsfield,*
  548 U.S. 557 (2006)............................................................................................8

*Matter of Hamptons, LLC v Zoning Bd. of Appeals,*
  2011 N.Y. Misc. LEXIS 4984; 2011 NY Slip Op 32714(U) (Sup. Ct. Suffolk Cty
  2011)..................................................................................................................11

*Harman v. Forssenius,*
  380 U.S. 528 (1965)............................................................................................3

*Kermani v. N.Y. State Bd. of Elections,*
  487 F. Supp. 2d 101 (NDNY 2006) ..................................................................20

*Landgraf v. USI Film Prods.,*
  511 U.S. 244 (1994)............................................................................................8

*Lerman v. Bd. of Elections,*
  232 F.3d 135 (2d Cir. 2000) .............................................................................18

*Lerman v Bd. of Elections,*
  232 F3d 135 (2d Cir. 2000) ................................................................................6

*Lynce v. Mathis*,
  519 U.S. 433 (1997)...................................................................................................8, 9

*Lynch v. City of New York*,
  589 F.3d 94 (2d Cir. 2009) ................................................................................................2

*Mastrovincenzo v. City of New York*,
  435 F.3d 78 (2d Cir. 2006) ................................................................................................3

*Medina v City of Osawatomie*,
  992 F Supp 1269 (D Kan 1998) ........................................................................................5

*Monserrate v. New York State Senate*,
  599 F.3d 148 (2d Cir. 2010) ..............................................................................................3

*New York State Psychiatric Ass'n, Inc. v. New York State Dep't of Health*,
  19 N.Y.3d 17, 968 N.E.2d 428 (2012) ............................................................................15

*Norman v. Reed*,
  502 U.S. 279 (1992)............................................................................................................5

*Novak v. Poughkeepsie*,
  57 Misc. 2d 927 (Supreme Court, Dutchess County 1968) ............................................10

*Obama for Am. v Husted*,
  697 F3d 423 (6th Cir. 2012) (White, J., concurring in part, dissenting in part) ...............5

*Packer Collegiate Inst. v. University of New York*,
  298 N.Y. 184 (1948).............................................................................................................9

*Patsy v. Bd. of Regents*,
  457 U.S. 496, 507 (1982) ..................................................................................................19

*People v. Pabon*,
  28 N.Y.3d 147 (2016) .......................................................................................................12

*Pitts v. Black*,
  608 F. Supp. 696 (SDNY 1984) .......................................................................................20

*Price v. N.Y. State Bd. of Elections*,
  540 F.3d 101 (2d Cir. 2008) ........................................................................................4, 18

*Rego Properties Corp. v. Fin. Adm'r of New York*,
  102 Misc. 2d 641 (Supreme Court, Queens County 1980) ............................................10

*Reynolds v. Sims*,
  377 U.S. 533 (1964)............................................................................................................1

*Rossito-Canty v. Cuomo*,
   86 F. Supp. 3d 175 (E.D.N.Y. 2015) ........................................................................... 3

*Scherbyn v. Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*,
   77 N.Y.2d 753 (1991) ........................................................................................... 15, 16

*Schulz v. Williams*,
   44 F.3d 48 (2d Cir. 1994) ..................................................................................... 18, 20

*State Comm. of the Indep. Party v. Berman*,
   294 F. Supp. 2d 518 (S.D.N.Y. 2003) ......................................................................... 18

*Tashjian v. Republican Party*,
   479 U.S. 208 (1986) ....................................................................................................... 5

*Tiraco v. New York State Bd. of Elections*,
   963 F. Supp. 2d 184, 192 (E.D.N.Y. 2013) .................................................................. 17

*Toney v. White*,
   488 F.2d 310 ................................................................................................................... 4

*United States Term Limits v. Thornton*,
   514 U.S. 779 (1995) ....................................................................................................... 5

*United States Trust Co. v. New Jersey*,
   431 U.S. 1 (1977) ........................................................................................................... 9

*Vanasco v. Schwartz*,
   401 F. Supp. 87 (SDNY 1975), *aff'd* 1976 U.S. LEXIS 921 (1976) ............................ 20

*Vanderkodde v. Mary Jane M. Elliott, P.C.*,
   951 F.3d 397, 405-9 (6th Cir. 2020) ........................................................................... 17

*Williams v. Rhodes*,
   393 U.S. 23 (1968) ....................................................................................................... 18

*Williams v. Salerno*,
   792 F.2d 323 (2d Cir. 1986) ........................................................................................ 20

*Yick Wo v. Hopkins*,
   118 U.S. 356 (1886) ....................................................................................................... 1

*Ex parte Young*,
   209 U.S. 123 (1908) ................................................................................................ 17, 18

**Statutes**

42 U.S.C. § 1983 ................................................................................................................ 19

New York Election Law, Section 2-122-a(13) .................................................................. *passim*

New York Election Law, Section 2-122-A(14) .................................................................. 11

**Other Authorities**

ABC News, Traffic Deaths Spike on Election Day, October 1, 2008,
   https://abcnews.go.com/Health/Healthday/story?id=5923793&page=1
   (accessed May 1, 2020) .................................................................................................. 21

https://www.newyork-demographics.com/counties_by_population .................................. 21

https://www.npr.org/2020/04/27/846549412/new-york-cancels-primary-election-
   angering-sanders-supporters ......................................................................................... 1

*New York Times*,
   https://www.nytimes.com/interactive/2020/04/28/us/elections/results-ohio-
   president-democrat-primary-election.html (accessed on May 1, 2020) ...................... 14

Suspend Definition, Black's Law Dictionary ................................................................ 14

U.S. Const., amend. I ...................................................................................................... 20

U.S. Const., amend. XI .................................................................................................. 17, 18

U.S. Const., amend. XIV ................................................................................................ 9

U.S. Const., Art. II, § 1 .................................................................................................. 18

US NEWS & WORLD REPORT, https://www.usnews.com/news/campaign-
   2008/articles/2008/09/24/mccain-suspends-campaign-shocks-republicans ............... 14

WASHINGTON POST,
   https://www.washingtonpost.com/opinions/2020/04/28/bernie-sanders-is-
   right-new-yorks-decision-cancel-its-primary-is-undemocratic (accessed on May 1,
   2020) .............................................................................................................................. 14

## PRELIMINARY STATEMENT

More than a century ago, the Supreme Court declared – though at the time, the declaration sounded ironically given the broad existing denials of the franchise – that the right to vote is a "fundamental political right, because [it is] preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). Recognizing the place of voting in the pantheon of fundamental rights has become a touchstone of American political culture and voting jurisprudence alike. This is so much true that the qualification that preceded the declaration in *Yick Wo* – that voting is a "privilege merely conceded by society according to its will, under certain conditions" – sounds unfathomably foreign. *Id. Compare, e.g.*, *Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964) ("Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society.").

Yet that precise sort of "you vote at my pleasure" thinking drives the actions of Defendants, who declared the exercise of the franchise to be no more than "a beauty contest that … seems to be unnecessary and, indeed, frivolous."[1] The Proposed Plaintiff-Intervenors, consisting of delegate candidates pledged to senator Bernie Sanders with their own names on the ballot and voters in the State of New York (together, the "Sanders Plaintiffs," with the delegates the "Delegate-Plaintiffs"), will either be literally removed from the ballot[2] or unable to exercise what many consider the most important part of the franchise.[3] And of course, the characterization of the primary as "unnecessary" ignores the fundamental structure and intentional of the Democratic Primary:

---

[1] https://www.npr.org/2020/04/27/846549412/new-york-cancels-primary-election-angering-sanders-supporters.

[2] This is not quite true. Because of the *ad hoc* and late nature of the Board's decision, *some* absentee ballots *will* have Sanders, Yang, and the Delegate Plaintiffs' names on them. IC ¶ 46; IC Ex. B (an absentee ballot distributed by Defendants). Ironically, it is concerns over exactly this kind of chaos and confusion that New York boards of election usually raise as a defense in cases of this kind. *See, e.g.*, *Credico v. New York State Bd. Of Elections*, 2013 US Dist. LEXIS 109737 at *71-72 (EDNY 2013), 10-cv-4555-(RJD)-(CLP) (state's anti-confusion "justification carries no weight in the context of this case, because the application of Section 7-104(4)(e) did not reduce clutter on the 2010 ballot and, if anything, enforcement of the Statute increased voter confusion.").

[3] Indeed, given that Defendants' proffered justification for the measure is safety by way of voter turnout, they acknowledge that not only is the expression of a preference in the presidential contest important to voters, it is *so important* that without the opportunity to do so, *many voters will elect not to exercise the franchise at all*.

1

delegates have the power to shape the party platform, regardless of the pageant winner, and the Delegate-Plaintiffs have been denied that right directly.  *Cf. Baca v. Colo. Dep't of State*, 935 F.3d 887, 956 (10th Cir. 2019) (laws requiring presidential electors to vote for the presidential candidate chosen by their State are unconstitutional).

Courts have long held that in the election context, the rules are the rules.  Senator Bernie Sanders and the Delegate Plaintiffs pledged to him qualified for the ballot.  Only a *post hac*, entirely arbitrary action by an unelected member of the Board of Elections has changed that.  Indeed, long standing New York law provides that it is all but impossible to be removed from the ballot, "however reasonable [the reason for removal] might appear."  *Matter of Biamonte v Savinetti*, 87 A.D.3d 950, 954 (2nd Dept. 2011).  To deprive the Sanders Plaintiffs and the non-intervenor Plaintiffs ("Yang Plaintiffs") the right to vote is Constitutionally impermissible.  The Court should grant the Sanders Plaintiffs' injunction motion and the emergency petition filed by the Yang Plaintiffs.

## FACTUAL & PROCEDURAL HISTORY

The Sanders Plaintiffs incorporate by reference the facts set out in their Complaint in Intervention ("IC"), in the interest of time and space, and given the limited time available to brief this case.

## ARGUMENT

### I.    A Mandatory Injunction is the Appropriate Remedy to Redress the Deprivation of the Sanders Plaintiffs' Rights.

"In general, the district court may grant a preliminary injunction if the moving party establishes (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party."  *Lynch v. City of New York*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted). "However, a

plaintiff cannot rely on the 'fair ground for litigation' alternative in challenging 'governmental action taken in the public interest pursuant to a statutory or regulatory scheme.'" *Monserrate v. New York State Senate,* 599 F.3d 148, 154 (2d Cir. 2010), *quoting Plaza Health Labs., Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir. 1989) (the moving party must establish a likelihood of success on the merits).  Rather, a "district court may enter a mandatory preliminary injunction against the government only if it determines that, in addition to demonstrating irreparable harm, the moving party has shown a 'clear' or 'substantial' likelihood of success on the merits." *Mastrovincenzo v. City of New York,* 435 F.3d 78, 89 (2d Cir. 2006), *citing No Spray Coal., Inc. v. City of New York,* 252 F.3d 148, 150 (2d Cir. 2001).

This case meets those exacting criteria.  As explained in more detail below, the substantive legal theories here are meritorious and the challenged actions are both unconstitutional and an improper exercise of discretion.  "'No right is more precious in a free country than that of having a voice in the election of those who make the laws … The right to vote remains, at bottom, a federally protected right … The federal protections of the right to vote also include those against interference from the states." *Rossito-Canty v. Cuomo,* 86 F. Supp. 3d 175, 180-1 (E.D.N.Y. 2015) (quotation marks and citations omitted).  "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Harman v. Forssenius,* 380 U.S. 528, 537 (1965).  Nor are there any factual disputes. The Sanders Plaintiffs have each expended substantial effort and financial investment obtaining the required number of signatures, in fact risking their health or even lives to do so in order to gain a place on the ballot as Delegates supporting U.S. Presidential candidate Bernie Sanders.  Having done everything required by law to gain a place on the ballot, they have now been disenfranchised by an *ex post facto* law apparently passed for the purpose of dropping Mr. Sanders from the ballot.

As to the relief sought, ordering the rescheduling of an election, or the reinstatement of canceled election, is a significant part of the Federal Courts' toolkit for redressing improper

exclusion of candidates from ballots (and likely the only possible remedy to such wrongs).  *Hadnott v. Amos,* 394 U.S. 358, 365-6 (1969) (ordering new election where a newly passed law required removal of black candidates from the ballot, based on their pre-enactment conduct); *Allen v. State Bd. of Elections*, 393 U.S. 544, 558 (1969) (ordering conduct of new election including candidates excluded by a late change in the requirements to be on the ballot; *Toney v. White,* 488 F.2d 310 (special election ordered combined with next general election date).  Particularly given that the Court will be considering this question only *one week* after the challenged decision by the Board, reinstatement of the pre-March 27 status quo (that has existed, again, for decades) is the appropriate remedy here.

II.  **The Yang Plaintiffs' and the Sanders Plaintiffs' Claims Will Succeed on the Merits**

The law at issue – Section 2-122-a(13) – is unconstitutional on its face, as it impedes on the substantive rights of candidates who have duly qualified for the Primary and gives unlimited power to the unelected Board to make whatever determination it chooses, regardless of the actual requests from the candidates.  The law is unconstitutional as applied to Senator Sanders and the Delegate Petitioners as it is being applied retroactively, in contravention of the law, to candidates who duly qualified for the ballot before this law even existed.  And should the statute not be found unconstitutional, the decision of the Board is arbitrary, capricious, and contrary to law for the reasons discussed below.

A.  Section 2-122-A(13) is unconstitutional as applied.

Section 2-122-A(13) is unconstitutional both because of its illegitimate, retroactive effect and as an impermissible restriction on the right of access to the ballot.

i.  *Section 2-122-A(13) is an unconstitutional deprivation of the right of access to the ballot under either* Anderson-Burdick *or strict scrutiny.*

In cases concerning the right of access to the ballot, "[t]he standards for review are clear[:] If the plaintiffs' rights are severely burdened, the statute is subject to strict scrutiny.  If the burden is

minor, but non-trivial, *Burdick's* balancing test is applied." *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008), *citing Burdick v. Takushi*, 504 U.S. 428, 435 (1992). *See also, Green Party v. N.Y. State Bd. of Elections*, 389 F.3d 411, 419 (2d Cir. 2004).[4] Here, the burden is as severe as it can be in cases of this kind: unilateral removal from the ballot, despite having fully satisfied every facet of the Election Law (both Sanders himself and the Delegates who, by design, are candidates in their own right). *Norman v. Reed*, 502 U.S. 279, 288-89 (1992) (denial of access to the ballot through unjustified signature measures – independently a non-burden – constitutes a severe burden and any law therefore "must be narrowly drawn to advance a state interest of compelling importance").

*Cf. United States Term Limits v. Thornton*, 514 U.S. 779, 837 (1995) (States cannot impose term limit restrictions on the right to run for Senate beyond those in the Federal Constitution)

The Supreme Court's discussion in *California Democratic Party v Jones* of the role of State laws in regulating party primaries is directly on point, showing another, free-standing way the law poses a severe burden. 30 US 567, 573-9 (2000). The Court emphasized that it has "continually stressed that when States regulate parties' internal processes they must act within limits imposed by the Constitution," and applied strict scrutiny. *Id.* at 573. *See also, Tashjian v. Republican Party*, 479 U.S. 208, 221 (1986) (a legislatively imposed "closed" primary system violates the Constitution). In short, the Supreme Court has long held that "even if the State were correct, a State, or a court, may not constitutionally substitute its own judgment for that of the Party." *Id.* at 224. The law at issue in *Jones* was a measure that opened a party's primary contest to voters outside the party, on which the Court remarked, "[w]e can think of no heavier burden on a political party's associational freedom,"

---

[4] Some courts (outside this Circuit) have theorized that neither strict scrutiny nor rational basis exists in *Anderson-Burdick* jurisprudence, but that the *Anderson-Burdick* balancing test may "approximat[e]" both standards. *See, e.g., Medina v City of Osawatomie*, 992 F Supp 1269, 1275 (D Kan 1998). *See also, Obama for Am. v Husted*, 697 F3d 423, 440 (6th Cir. 2012) (White, J., concurring in part, dissenting in part) ("*Anderson-Burdick* balancing test … is flexible enough to *approximate* the rational-basis test when appropriate, i.e., where the burden is slight, the required showing by the state is correspondingly light.") (emphasis added).

because "[s]uch forced association has the likely outcome -- indeed, in this case the intended outcome --  of changing the parties' message" 30 U.S. at 581-2.

So too here.  The Democratic Party has designed its system to be one not of direct election – a decision that has been challenged and found to be a legitimate choice – but one where voters elect delegates that speak for them at a national convention.  While there may be policy objections to the system, its design allows even nominal losers to have a voice in building a coalition that moves into the general election.  The rules of this game are well settled and spelled out under the strictly enforced, existing Election Law.  Yet at the eleventh (and some change) hour, State government officials have inserted themselves into the expressive determination of the party, calling the system a mere "beauty contest" and "frivolous."  This insertion has the inevitable effect of "changing the parties' message," an effect for which there is "no heavier burden."

Once a plaintiff shows a burden on the right of access to the ballot, the burden of proof shifts.  The Court should weigh "the precise interests *put forward by the State as justifications* for the burden imposed by its rule." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) (emphasis added). *See also, Green Party v NY State Bd. of Elections*, 389 F3d 411, 421 (2d Cir. 2004), *Lerman v Bd. of Elections*, 232 F3d 135, 149 (2d Cir. 2000); *and Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994). Moreover, the mere "fact that the defendants' asserted interests are 'important in the abstract' does not necessarily mean that its chosen means of regulation 'will in fact advance those interests.'" *Green Party* at 421, *quoting Lerman* at 149.

The measure chosen by the State here, under any level of scrutiny, fails spectacularly to "in fact advance [its proffered] interests." *Id.*  To be sure, protecting voters from the COVID-19 pandemic is without a doubt a deeply weighty concern.  But the measure chosen fails to "in fact" advance that interest, particularly in light of the available alternatives.

6

*First*, the actual primary *has not* been cancelled.  Voters will still – unless they use provided vote-by-mail alternatives – line up on election day.  In person polls will be open for primaries in 100% of the counties with populations exceeding one million (Kings, Queens, New York, Suffolk, Bronx, Nassau), and there are primaries being held in 42 of 62 counties in New York State.  The sole effect Defendants actions have on the majority of New Yorkers is that they will simply be unable to cast a vote in the presidential contest.  Moreover, the measure used injects unnecessary confusion and chaos into the process – precisely the interest Boards usually assert to defend denials of access to the ballot.  *Cf. Credico v. New York State Bd. Of Elections*, 2013 US Dist. LEXIS 109737 at *71-72 (EDNY 2013), 10-cv-4555-(RJD)-(CLP) (state's anti-confusion "justification carries no weight in the context of this case, because the application of Section 7-104(4)(e) did not reduce clutter on the 2010 ballot and, if anything, enforcement of the Statute increased voter confusion.").  Allowing an administrative agency to simply decide which races do and do not matter is a dangerous and worrying precedent alone, but where it fails to "in fact" achieve any additional safety, it is Constitutional anathema.

*Second*, much better alternatives exist.  There is no reason the primary cannot be delayed again (it has only been set for its present date for a very short time).  Moreover, the State has already taken significant steps to shift to a vote-by-mail solution.  There is no reason that solution should not be used for the presidential contest.  Indeed, a number of absentee ballots *with presidential candidates* have already been issued to voters and returned with votes.  Such rejection of already cast votes is absurd.

*Finally*, the offered justification of preventing "beauty contests" would have untold repercussions for democracy and is not legitimate in any sphere.  If boards of election may simply look and decide "that race is not important," there is no logical stopping point.  Indeed, as noted above, the Board's justification here would suggest that – if there had been political will – John

McCain's presidential bid could have been stopped if any State had simply thought of passing the right law. *See, supra*, note **Error! Bookmark not defined.**.  McCain "suspended" his campaign amid a crisis, then-candidate Obama did not.  Given the time frames at issue – the time between action and ballot finality – Defendants suggest that a dedicated board of election could have removed candidate McCain from the ballot and declared nothing could be done.  That cannot be the law.

> ii.  *Section 2-122-A (13) Should Not Have Been Applied Retroactively to Candidates Who Were Duly Qualified Prior To Its Enactment and Such a Retroactive Application is Unconstitutional*

Section 2-122-A(13) is written in the present tense:  it applies "if the candidate publicly announces," and not "if the candidate has publicly announced."  As correctly argued by the Yang Plaintiffs, this is significant because conduct-regulating statutes such as this one are presumed not to apply retroactively unless the legislature signals that they should reach past conduct (Yang Plaintiffs' MOL at pp. 15-16). "The presumption against the retroactive application of new laws is an essential thread in the mantle of protection that the law affords the individual citizen." *Lynce v. Mathis*, 519 U.S. 433, 439 (1997). This presumption "is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). When "a new statute would retroactive effect, *i.e.* whether it would impair rights a party possessed when he acted. . .  our traditional presumption teaches that it does not govern absent clear [legislative] intent favoring such a result." *Id.*, 511 U.S. 244, 280 (1994). "The presumption against statutory retroactivity is founded upon sound considerations of general policy and practice, and accords with long held and widely shared expectations about the usual operation of legislation." *Id.* at 286; *see also Hamdan v. Rumsfield*, 548 U.S. 557, 576 (2006); *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006). Here, lacking clear signals from the legislature that it had considered the retroactive impact on substantive rights and had intended this extraordinary result, the Court should construe § 2-122-A(13) as not applicable to candidates who were duly qualified before the enactment of the

law. To do otherwise would violate the core principles of fairness that this country and our Constitution was founded upon.

Indeed, Defendants retroactive application of § 2-122-A(13) to remove duly qualified candidates from a presidential primary ballot violates the Due Process of the Fourteenth Amendment. The Due Process Clause "protects the interests in fair notice and repose that may be compromised by retroactive legislation." *Lynce v. Mathis*, 519 U.S. 433, 439 (1997) ("The specific prohibition on *ex post facto* laws is only one aspect of the broader constitutional protection against arbitrary changes in the law. In both the civil and the criminal context, the Constitution places limits on the sovereign's ability to use its lawmaking power to modify bargains it has made with its subjects. The basic principle is one that protects not only the rich and the powerful . . . ." *Ibid.* at 440).  Retroactive civil legislation violates due process where it is "particularly harsh and oppressive" or "arbitrary and irrational." *United States Trust Co. v. New Jersey*, 431 U.S. 1, 17, n. 13 (1977), quoting *Welch v. Henry*, 305 U.S. 134, 147 (1038). As discussed below, Defendants application here of § 2-122-A (13) was arbitrary, irrational and particularly harsh and as such violates Plaintiffs' due process guarantees.

        B.        Section 2-122-A(13) is an Unconstitutionally Vague Delegation of Authority.

Section 2-122-A(13) is facially unconstitutional as a delegation of legislative authority to the Board of Elections.  The flaw in the new statute's wording lies in the grant of discretion to BOE: "the state board of elections *may* determine by such date that the candidate is no longer eligible and omit said candidate from the ballot."  As phrased, this is not a ministerial act, but a grant of entire discretion, which constitutes an impermissible delegation under the rule in *Packer Collegiate Inst. v. University of New York*, in which the Court of Appeals delegated a discretionary licensing decision, with no criteria, to the Commissioner of Education.  298 N.Y. 184 (1948).  There, the Court held that "[t]he statute before us is nothing less than an attempt to empower an administrative officer, the

State Commissioner of Education, to register and license, or refuse to register and license, private schools, under regulations to be adopted by him, with no standards or limitations of any sort," and where such a grant of power is "without check or guidance," it is facially invalid.  S*ee also Rego Properties Corp. v. Fin. Adm'r of New York,* 102 Misc. 2d 641 (Supreme Court, Queens County 1980) (statute  was "an unconstitutional delegation of legislative power because it in effect gives the assessors unlimited discretion to select the rate at which property will be assessed"); *Novak v. Poughkeepsie,* 57 Misc. 2d 927 (Supreme Court, Dutchess County 1968) ("A Town Board cannot validly delegate legislative power to an administrative body without prescribing any standard or rule by which action by that administrative body is to be governed"); *Gardiner v. Stanley Orchards, Inc.,* 105 Misc. 2d 460 (Supreme Court Ulster County 1980) ("In the absence of standards to guide the neighboring property owners in the exercise of their authority the local law is clearly an unlawful delegation of legislative or governmental authority to individuals").  Moreover, such a delegation, that gives fiat control to an unelected Commissioner regarding vital Constitutional right and duty of the legislature, cannot stand.  *Cf. Clinton v. City of N.Y.*, 524 U.S. 417, 449 (1998).  If the New York legislature wanted to cancel the presidential primary, it should have done so itself and taken responsibility for that decision (of course, such a law would likely be unconstitutional).  It may not simply delegate and wash its hands of a decision it must make.

C.        The Board's Decision Was Arbitrary, Capricious, and an Abuse of Discretion.

Even if the law and concomitant decision of the Board are found Constitutional (they should not be) the Board's decision was arbitrary, capricious, and an abuse of discretion for several reasons.

Where administrative actions are challenged, review necessarily entails the examination of an exercise of discretion.  *See Matter of Anonymous v. Commissioner of Health*, 21 A.D.3d 841 (1st Dept 2005).  The standard of review is "whether a determination was made in violation of lawful

procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion."
*Anonymous v. Commissioner*, 21 A.D.3d 841 at 843 (1st Dept 2005).   A determination is arbitrary and
capricious "when it is taken without sound basis in reason or regard to the facts."   *Adams v Imm*, 32
Misc. 3d 1245(A) (Sup. Ct. Nassau Cty. 2011).   The Court is also empowered to set aside an agency's
decision should it be found to be "abuse" of the conditions to which the agency is bound.   *See Matter
of Hamptons, LLC v Zoning Bd. of Appeals*, 2011 N.Y. Misc. LEXIS 4984; 2011 NY Slip Op 32714(U)
(Sup. Ct. Suffolk Cty 2011).   The Board's decision here violates the power granted to it and abuses
discretion it should not have been given.

> *i.   The Board's decision was contrary to law because the statute did not authorize the Board to
> remove candidates against their will*

The Board's decision was contrary to law because Section 2-122-A(13), on its face, was not
intended to authorize the Board to remove a candidate from the ballot against the candidate's will.
The Board was bound to follow the clear intent of the law, which was to give the Board the power
to remove a candidate only if the candidate has expressed a clear intention not to appear on the
ballot in the state.

Section 2-122-A(13) states in part as follows[5]:

> … if a candidate for office of the president of the United States who is otherwise
> eligible to appear on the presidential primary ballot to provide for the election of
> delegates to a national party convention or a national party conference in any
> presidential election year, publicly announces that they are no longer seeking the
> nomination for the office of president of the United States, or if the candidate
> publicly announces that they are terminating or suspending their campaign, or if the
> candidate sends a letter to the state board of elections indicating they no longer wish

---

[5] Section 2-122-A(14), which relates to the removal of Delegate candidates, is entirely derivative of Section 2-
122-A(13), collapsing what might be two inquiries into a single question.  Section 2-122-A(14) states in relevant part that:

> "candidates for delegates and/or alternate delegates who are pledged to candidates of the office of president of
> the United States who have been omitted pursuant to subdivision thirteen of this section shall also be omitted
> from the certificate required by section 4-110 of this chapter and/or shall be determined to not be a candidate
> pursuant to section 4-114 of this chapter"

The Board of Elections would not have the right to remove the Sanders Delegate candidates if not but for Section 2-
122-A(13).

to appear on the ballot, the state board of elections may determine by such date that the candidate is no longer eligible and omit said candidate from the ballot …

The text reveals the law is aimed at <u>the expressed intention of the candidate</u> and the <u>actual status</u> of the candidate's campaign, not the Board's subjective feeling of whether an election would be a "beauty contest."  It would be an absurd result to read the section to allow a Board Commissioner unfettered, unilateral power to remove a candidate from the ballot with no process, and based on only the Board's subjective interpretation of the status of the campaign and vitality of the race.  Yet that is the exact result reached in the Board's tortured interpretation of the statute.

Appellate Courts have long held that the "clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof."  *People v. Pabon*, 28 N.Y.3d 147, 152 (2016).  A statute should be construed "to give effect to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303 (2009). "All parts of a statute must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof." *Id.*  "In giving effect to these words, the spirit and purpose of the act and the objects to be accomplished must be considered.  The legislative intent is the great and controlling principle." *Council of City of N.Y. v. Giuliani*, 93 N.Y.2d 60, 69, 710 N.E.2d 255, 259 (1999).

Here, the Legislature did not intend to allow the Board unfettered power to determine whether a campaign is "suspended," especially where the candidate themselves say that they have not.  Confirming this intuition, while the initial statute raised no alarm, the public, the media, and our elected officials are unified in their horror at the Board's decision.  On April 27, Congresswoman Alexandria Ocasio-Cortez said, "It is completely wrong for the Board to cancel New York's Presidential Primary. This decision is not informed by public health[.]"  On April 27, voter rights advocate and potential Joe Biden running mate Stacey Abrams tweeted "NY's decision

to cancel its primary creates a false choice: asking voters to pick safety or participation in our democracy. This is wrong. Elections officials can hold safe, accessible elections, where voters cast ballots by mail or safely in person. #COVID19 is no excuse." The Washington Post called the decision to cancel the primary "unprecedented in modern history."

New York state legislators who voted on Section 2-122-A(13) are also largely, if not uniformly, against the Board's decision. State Assemblywoman Yuh-Line Niou tweeted in agreement with Abrams's condemnation of the decision, saying, "This is right." State Senator Alessandra Biaggi said, "This is ridiculous. NY'ers can be safe – vote absentee - & still vote in a Presidential primary." State Senate Deputy Majority Leader Mike Gianaris agreed, stating, "I said cancel RENT, not the Presidential primary." On April 28, Gianaris followed up by saying, more bluntly, "it's BS our presidential primary is canceled[.]"

The Board's decision was also arbitrary and capricious and contrary to law because, even if the statute gave the Board authority to remove a candidate that they *believed* did not intend to remain on the ballot, *that designation would not apply to Senator Sanders and his delegates*. Sanders made clear, many times, that he intended to stay on the ballot, both through public statements and in a direct letter to the Board. On April 8, Sanders said, "On a practical note, let me also say this: **I will stay on the ballot in all remaining states and continue to gather delegates**." On April 26, the Sanders campaign wrote and declared "Senator Sanders wishes to remain on the ballot." The Sanders campaign did not terminate his candidacy with the Federal Election Commission. Commissioner Kellner even acknowledged on the record that he received "several thousand" emails re-questing that these candidates not be removed. And the Delegate-Plaintiffs, who have not even taken the minor steps Sanders himself said, also intended to remain on the ballot. It bears repeating that neither Vice President Biden, nor the New York State Democratic Party, nor the Democratic National Committee has asked the Board to dishonor the wishes of Senator Sanders or the Delegate

Petitioners.  It has been solely the discretion of the unelected Board officials, acting without the blessing or instruction of any wing the Democratic Party.

The Board's decision is also untenable because the word "suspending" is largely *not* used in the sense the statute seems to demand.  *First,* the term "suspended" has unique significance in the political realm.  Indeed, its *lack* of significance is likely why candidates speak of "suspending" rather than terminating their campaigns.[6]  *Second*, as the Sanders Campaign pointed out in its April 26, 2020 Letter, it quite literally <u>did not</u> suspend its campaign with the Federal Election Commission. *Third*, Black's Law Dictionary defines to "suspend" as "to interrupt; to cause to cease for a time; to stay, delay, or hinder; to discontinue temporarily, <u>but with an expectation or purpose of resumption</u>." Suspend Definition, Black's Law Dictionary (emphasis added).  Such an expectation obtains in the political realm.[7]

In short, then, on its face, Section 2-122-A(13) does not give the Board the right to substitute its own judgment for the active, explicit expressions of intent made by the candidate to remain on the ballot.  To do so would lead to unreasonable results at variance with the policy of the

---

[6] In 2008, Presidential Candidate John McCain "suspended" his campaign in light of the 2008 financial crisis, just as Sanders suspended his campaign amid the COVID-19 pandemic. McCain Suspends Campaign, Shocks Republicans, US NEWS & WORLD REPORT, https://www.usnews.com/news/campaign-2008/articles/2008/09/24/mccain-suspends-campaign-shocks-republicans.  McCain simply <u>stopped campaigning</u> – he remained on every ballot in the 2008 election cycle as he was the Republican nominee for President.  No other State has re-interpreted the word "suspend" in the manner New York has.  For example, all of the candidates remained on the ballot in Ohio, which held its primary on April 28, 2020. *See* "Live Results: Ohio Presidential Primary 2020," *New York Times*, https://www.nytimes.com/interactive/2020/04/28/us/elections/results-ohio-president-democrat-primary-election.html (accessed on May 1, 2020).

[7] As the Washington Post observed:

> States typically do not cancel their primaries after every candidate but one drops out. Democrats held their regularly scheduled primaries in 2000 and 2004 even after opponents of eventual nominees Al Gore and John Kerry left the race. Republicans held their primaries in 2000, 2008, 2012 and 2016 after their eventual nominees were effectively unopposed.

*See* "Bernie Sanders is right. New York's decision to cancel its primary is undemocratic, WASHINGTON POST, https://www.washingtonpost.com/opinions/2020/04/28/bernie-sanders-is-right-new-yorks-decision-cancel-its-primary-is-undemocratic (accessed on May 1, 2020).  What does it mean to "suspend" a campaign? What does it mean in the midst of a global pandemic which makes campaigning a literal impossibility?  The vagueness of whether a candidate has "suspended" their campaign, and what that means, leads  back to the impermissible vagueness and unconstitutional nature of the statute.

legislation as a whole.  *New York State Psychiatric Ass'n, Inc. v. New York State Dep't of Health*, 19 N.Y.3d 17, 25–26, 968 N.E.2d 428, 432 (2012).  Thus, the Board's decision to remove Sanders from the ballot over the objection of the campaign itself exceeds the power delegated by the statute.

> ii.  *The Board's Decision Was Arbitrary and Capricious and Contrary to Law Because the Grounds on which It Rests Are Improper*

Even otherwise permissible administrative action becomes improper when it rests on improper grounds.  Commissioner Kellner and Commissioner Spano's brief comments on their decision[8] show a facially inappropriate basis for their actions, rendering a decision that was arbitrary and capricious and contrary to law.  The Commissioners never sought to square the disconnect between Sanders' use of the word "suspend" with his stated desire to remain on the ballot and his explicit request not to be removed from the ballot.  Instead, Commissioners Kellner and Spano relied on logic not permitted by the statute – removing Sanders and his Delegates based on their own subjective opinions on whether they thought an election was "necessary" or worthwhile in light of the COVID-19 crisis.  These rationalizations make the administrative act void.

This Court's review of the propriety of Kellner and Spano's decision is limited to their contemporaneous statements.  It is the settled rule "that judicial review of an administrative determination is limited to the grounds invoked by the agency."  *Scherbyn v. Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 N.Y.2d 753, 758 (1991).  The Court "must judge the propriety of such action solely by the grounds invoked by the agency ... [i]f those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."  *Id.*, *quoting Matter of Montauk*, 41 N.Y.2d. 913, 913 (1977).

Here, the only power granted to the Board under Section 2-122-A(13) – if indeed it is Constitutional – is the *discretionary* ability to remove a candidate from the ballot if their campaign is

---

[8] The only record we have on this decision, as there was no hearing and no due process provided to the affected parties –

*actually* terminated. Both Commissioners ignored the text of the law and chose to remove Sanders and his delegates for no reason other than their own subjective opinions that the election was "unnecessary."

Commissioner Kellner stated that, in his view, even though Sanders intended to collect delegates, that "the real contest" for the nomination was over. Kellner even acknowledged that there *was* a remaining contest, but that – in his mind – it was "essentially a beauty contest that … seems to be unnecessary and indeed frivolous." Remarkably, Kellner even hand-waved away the importance of elections in general. Kellner stated about now-canceled special elections that "while elections are very important … they serve no significant purpose at a time where it is better for us to be conserving our resources." He then declared, as if it were his decision to make, that "the Presidential contest is over." Commissioner Spano also deemed the right to vote and the right to due process unimportant and the election meaningless in his view. Spano stated that "we should minimize the number of people on the ballot … and not have anyone on the ballot just for the purposes of issues at a Convention."

These are not sufficient reasons under the existing law to justify depriving New Yorkers of the right to vote in the primary, nor are they the reasons the statute permits the Board to act. "An agency's failure to follow its own procedures or rules in rendering a decision is arbitrary and capricious." *Matter of D.F. v. Gladys Carrion*, 43 Misc. 3d 746, 756 (Sup. Ct. N.Y. Cty. 2014). In *Scherbyn v. Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, the Court of Appeals upheld the Supreme Court, which had correctly determined that the decision to dismiss an employee was contrary to law simply because it was made on grounds not authorized by statute. *See* 77 N.Y.2d 753 (1991).

Each and every one of these rationales is improper, illegal, and not authorized by the statute. If the statute is valid at all, the only proper basis is that which is articulated in the statute: the actual

status of the campaign – not whether in the unelected Board Commissioner's opinion the election is worthwhile.

> **D.**      **Defendants' Signaled Arguments Lack Merit.**

Defendants have signaled they intend to make three arguments against relief: (1) Eleventh Amendment immunity; (2) exhaustion;[9] and (3) standing ("Plaintiff Andrew Yang cannot show any harm or injury"). *See* ECF No. 4 at 1-2. As concerns the Sanders Plaintiffs, these arguments are without merit.

*First*, the Eleventh Amendment immunity argument does not apply when a plaintiff has properly named an appropriate *Ex parte Young* defendant. As Judge Matsumoto explained in *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 192 (E.D.N.Y. 2013) (cited the Court's Order at ECF No. 9):

> "under the *Ex parte Young* doctrine, sovereign immunity does not preclude a plaintiff from seeking prospective injunctive relief or declaratory relief against a state official acting in his or her official capacity for ongoing violations of federal law. … Specifically, in his Second Amended Complaint, Plaintiff has sued the State Board, a New York state agency, **and has failed to name any state official as a defendant**. Consequently, Plaintiff's reliance on the *Ex parte Young* doctrine is unavailing, and the Eleventh Amendment remains a bar to Plaintiff's claims against the State Board."

*Id.* (citations omitted, emphasis added), *citing State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007); *Anghel v. N.Y. State Dep't of Health*, 947 F. Supp. 2d 284, 298, No. 12-CV-3484, 2013 WL 2338153, at *9 (E.D.N.Y. May 29, 2013) ("the doctrine of *Ex Parte Young* ... 'allows a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in

---

[9] By framing the argument as being about "exhaustion," Defendants seem to suggest that a State Court judgment would not be final, and could essentially be appealed to this Court. This argument might be better made as one of abstention, but such arguments have very questionable vitality. *See generally, Vanderkodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 405-9 (6th Cir. 2020) (Sutton, J., concurring) ("Absent a claim seeking review of a final state court judgment, a federal court tempted to dismiss a case under *Rooker-Feldman* should do one thing: Stop. If the temptation lingers, the court should try something else: Reconsider. And if that does not work, the court should exercise jurisdiction anyway and ask the U.S. Supreme Court to reverse it. The Court, I suspect, never will, and that's all we lower court judges should need to know.").

enforcing state law'") (alteration in original), *quoting CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002).

This argument fails because, undisputedly, Defendants Kellner and Spano have the power to provide the relief requested under *Ex parte Young*, 209 U.S. 123 (1908). Because the Sanders Plaintiffs only seek injunctive and declaratory relief, no Eleventh Amendment immunity applies. *See, e.g.*, *Credico v. N.Y. State Bd. of Elections*, 751 F. Supp. 2d 417, 420 (E.D.N.Y. 2010) (no Eleventh Amendment immunity where relief sought was an injunction requiring plaintiff's name to be placed on the ballot); *Chou v. N.Y. State Bd. of Elections*, 332 F. Supp. 2d 510, 513 (E.D.N.Y. 2004). Indeed, Defendants' argument – both as to this point and the "exhaustion" point discussed below – is belied by the sheer volume of reported jurisprudence analyzing Constitutional questions of access to the ballot and election law in Federal Courts. *See, for examples*, *Price v NY State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008); *Green Party v. N.Y. State Bd. of Elections*, 389 F.3d 411, 422 (2d Cir. 2004); *Lerman v. Bd. of Elections*, 232 F.3d 135, 145 (2d Cir. 2000); *Schulz v. Williams*, 44 F.3d 48, 60 (2d Cir. 1994); *State Comm. of the Indep. Party v. Berman*, 294 F. Supp. 2d 518 (S.D.N.Y. 2003); *and Gonsalves v. N.Y. State Bd. of Elections*, 974 F. Supp. 2d 191, 194 (E.D.N.Y. 2013). As the Supreme Court has put it,

> Obviously we must reject the notion that Art. II, § 1, gives the States power to impose burdens on the right to vote, where such burdens are expressly prohibited in other constitutional provisions. We therefore hold that no State can pass a law regulating elections that violates the Fourteenth Amendment's command that 'No State shall . . . deny to any person . . . the equal protection of the laws.'

*Williams v. Rhodes*, 393 U.S. 23, 29 (1968) (ellipsis in original).

*Second*, as a general rule, "it is unnecessary to consider whether plaintiff has failed to exhaust her administrative[10] remedies" in an constitutional challenge regarding access to the ballot. *Brown v.*

---

[10] Again, this is requires presuming that Defendants are characterizing a State Court proceeding as merely "administrative," which it is not. *See supra*, note 9. However, "exhaustion" is the argument Defendants have signaled

*Dean*, 555 F Supp 502, 505-506 (DRI 1982).  This is because, categorically, exhaustion is not a prerequisite to claims under § 1983.  *Patsy v. Bd. of Regents*, 457 U.S. 496, 507 (1982) ("exhaustion of state administrative remedies is not a prerequisite to an action under § 1983").  More to the point, exhaustion is not required when it would "inevitably result in the election occurring before a decision could be obtained," because such a requirement "would be futile and self-defeating, and is a burden the plaintiff should not be expected to carry."  *Brown v. Dean*, 555 F. Supp. at 505-506.

And, as noted above, if such an exhaustion requirement existed, none of many, many Federal District and Court of Appeal decisions on the Constitutionality of various election laws and actions would have ever come about.  In short, as explained in *Patsy*, relevant legislative history shows that "Congress understood that exhaustion is not generally required in § 1983 actions, and [a] judicially imposed exhaustion requirement … would usurp policy judgments that Congress has reserved for itself."  457 U.S. at 508.

*Third*, the Sanders Plaintiff-Delegates, whose names have been literally removed from all but those absentee ballots already distributed to voters, can easily show harm.  Removal of one's name from the ballot is not just an injury, but likely a severe enough injury to automatically trigger strict scrutiny.  *Cf. Green Party v. N.Y. State Bd. of Elections*, 389 F.3d 411, 422 (2d Cir. 2004) (removing a party's ballot line for failure to obtain enough votes is a severe burden, triggering strict scrutiny), *Credico v. N.Y. State Bd. of Elections*, 751 F. Supp. 2d 417, 422 (E.D.N.Y. 2010) (granting an injunction, applying *Anderson-Burdick* scrutiny, when a plaintiff complained that he was not listed on all of the ballot lines he might have been).  Here, the Defendants have – without the blessing of the party and against the repeated and express wishes of the Sanders campaign – removed the Sanders Plaintiff-Delegates names from the ballot.  Before Defendants acted, had New York Election Law applied in

---

they will make, perhaps thinking of this case as like a *Habeas* case.  Not so:  this is a 1983 case, where no exhaustion is required.

the way it has applied for the half-century, there would have been no way to remove Sanders and his Delegates from the ballot even if they *wanted* to. Now, they are not on ballot, against their wishes. That is, unquestionably, an injury to both the delegates and voters who wish to vote for Sanders.

### III.   The Balance of the Equities Weighs in Favor of Injunctive Relief and Irreparable Harm is Presumed.

Unlike other types of cases where the grant or denial of an injunction may be totally unrelated to victory on the merits, in constitutional and election cases, a party prevailing on the underlying claims is presumed to have demonstrated that the equities balance in its favor. "The typical remedy afforded when a statute is found to be facially unconstitutional is an injunction enjoining its enforcement." *Schulz v. Williams,* 44 F.3d 48 (2d Cir. 1994) (provision of voters lists only to major parties was denial of equal protection to minority parties). "In matters involving allegations or claims of First Amendment violations, irreparable harm may be presumed." *Kermani v. N.Y. State Bd. of Elections,* 487 F. Supp. 2d 101 (NDNY 2006) (injunction granted against enforcement of Election Law section restricting outside expenditures in primary elections); *Green Party v. N.Y. State Bd. of Elections,* 389 F.3d 411 (2d Cir. 2004) (injunction granted against Election Law section canceling status of previously enrolled parties which fail to get 50,000 votes in gubernatorial election); *Williams v. Salerno,* 792 F.2d 323 (2d Cir. 1986) (injunction granted against Board of Elections determination that college dorm could not constitute "residence" for voter registration purposes); *Pitts v. Black,* 608 F. Supp. 696 (SDNY 1984) (injunction against refusal to register homeless); *Vanasco v. Schwartz,* 401 F. Supp. 87 (SDNY 1975), *aff'd* 1976 U.S. LEXIS 921 (1976) (enjoining BOE rules which censored content of campaign materials); *Credico v. New York State Bd. of Elections,* 751 F. Supp. 2d 417 (EDNY 2010) ("Because violations of First Amendment rights are commonly considered irreparable injuries, I have no trouble concluding that plaintiffs have established that, in the event the injunction is not granted, they will suffer an irreparable injury") (cleaned up).

New York citizens now have the right to go to the polls in most of the state on June 23, 2020. In person polls will be open for primaries in every county with a population exceeding one million (Kings, Queens, New York, Suffolk, Bronx, Nassau).  By contrast, fifteen of New York's sixty-two counties have a population of less than 50,000,[11] and given that the criteria for not holding a primary is having no contested elections besides the presidential primary, these small counties likely make up a disprop

As detailed throughout Part II, *supra*, there no justification – cost, safety, or otherwise – for canceling the Presidential primary when there is vote-by-mail and nearly every person in New York State will have the right to do in person voting on that date even if the primary is canceled, let alone the weighty justification required by law.  Nor would it be wise to set a precedent that the executive can unilaterally cancel elections, without a hearing, because of some unknown and unproven marginal concerns about cost.[12]

---

[11] https://www.newyork-demographics.com/counties_by_population.

[12] While, of course, the COVID-19 crisis is terrifying and its threats are real, it is notable that "researchers discovered that Americans were about 18 percent more likely to die in accidents during polling hours on presidential election days than on other Tuesdays." ABC News, Traffic Deaths Spike on Election Day, October 1, 2008, https://abcnews.go.com/Health/Healthday/story?id=5923793&page=1 (accessed May 1, 2020).  Given the current universal availability of voting by mail in New York, it would not be surprising if that actual risk to safety caused by the minimal number of people who still exercise their right to vote in person was not far from any number of quotidian risks that might be used to justify cancellation of future elections the executive branch believes are mere "beauty contest[s]."

## CONCLUSION

For the reasons above, the Sanders Plaintiffs respectfully request the Court grant their motion for injunctive relief, and further grant the Yang Plaintiffs' request for emergency relief.

Respectfully submitted,

/s/ J. Remy Green

_____

Elena L. Cohen
J. Remy Green
Jonathan Wallace, *of counsel*
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, New York 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com
elena@femmelaw.com

Arthur Z. Schwartz
**ADVOCATES FOR JUSTICE**
225 Broadway, Suite 1902
New York, NY 10007
aschwartz@afjlaw.com