UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREW YANG, JONATHAN HERZOG, HELLEN SUH,
BRIAN VOGEL, SHLOMO SMALL, ALISON HWANG,
KRISTEN MEDEIROS and DR. ROGER GREEN,
individually and on behalf of all others similarly situated,

                                        Plaintiffs,

                    v.

DOUGLAS A. KELLNER, Co-Chair and Commissioner,
ANDREW SPANO, Commissioner, PETER S. KOSINSKI,
Co-Chair, TODD D. VALENTINE, Co-Executive Director,
and ROBERT A. BREHM, Co-Executive Director,
individually and in their official capacities at the New York
State Board of Elections, and the NEW YORK STATE
BOARD OF ELECTIONS,

                                        Defendants.

No. 20-cv-3325 (AT)

**STATE DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO THE MOTION TO INTERVENE AND FOR A PRELIMINARY INJUNCTION**

LETITIA JAMES
Attorney General
State of New York
*Attorney for State Defendants*
28 Liberty Street
New York, NY 10005
(212) 416-8610

Matthew L. Conrad
Assistant Attorney General
Of Counsel

Defendants Douglas A. Kellner, Co-Chair and Commissioner, Andrew Spano, Commissioner, Peter S. Kosinski, Co-Chair, Todd D. Valentine, Co-Executive Director, and Robert A. Brehm, Co-Executive Director, individually and in their official capacities at the New York State Board of Elections, and the New York State Board of Elections (collectively, the "State Defendants") respectfully submit this memorandum of law in opposition to the proposed Plaintiff-Intervenors' Motion to Intervene (ECF No. 29) and Motion for Preliminary Injunction (ECF No. 30).[1]

## PRELIMINARY STATEMENT

A pledged delegate on a primary election ballot is not being elected to any office, nomination, or even party position. The pledged delegate's place on the ballot is entirely derivative of that of the candidate to whom her or she is pledged. Even if a delegate qualifies for the ballot, if his or her candidate does not, that delegate will not be on the ballot. While primary results for pledged delegates are provided to the relevant political party, this does not dictate any particular result because the totals are used *by the party* according to its delegate plan to select the actual delegates. In short, the limited interest a pledged delegate has with respect to ballot access in a primary election is entirely subordinate to both the candidate to whom the delegate is pledged and, in turn, the political party that will make the ultimate determination as to which delegates attend its national convention.

With this understanding, it is clear that the proposed Plaintiff-Intervenors, a group of

---

[1] Plaintiff-Intervenors' motions and proposed intervenor complaint purport to add Andrew Cuomo, as Governor of the State of New York, as a defendant. (ECF No. 29-2). A review of the docket as of this submission reflects that no summons has yet to issue and the Court has yet to rule on the motion to intervene. As such, at this time Governor Cuomo is not a proper party. The arguments in this brief, however, would apply with equal force to any claims alleged against Governor Cuomo.

prospective delegates to the Democratic National Convention pledged to Senator Bernie Sanders, lack independent standing to bring the claims in the proposed complaint on their own behalf. This unremarkable conclusion is further evident from the fact that the candidate to whom these prospective delegates are pledged, Senator Bernie Sanders, has already publicly entered into an agreement with the sole remaining Democratic Presidential nominee, former Vice President Joe Biden, regarding the allocation of delegates to the Democratic National Convention. For this reason, together with those in the State Defendant's Memorandum in Opposition to Plaintiff's Request for Emergency Relief, (ECF No. 26) ("State Defendants Memo"), as well as the additional grounds described herein, the Court should deny the motion to intervene and the motion for a preliminary injunction.  The proposed Plaintiff-Intervenors cannot provide any legal basis upon which to grant the extraordinary relief of an injunction requiring the State Board to hold an uncontested presidential primary election.

## ARGUMENT

## I.    THE PROPOSED PLAINTIFF-INTERVENORS LACK STANDING

For the same reasons as explained in the State Defendants' Memo, the prospective delegate intervenors lack standing to bring suit. State Defendants Memo, pp. 12-13.  Under the rules of the New York State Democratic Party, the vote totals for delegates to the Democratic National Convention are not determinative. See Declaration of Robert A. Brehm dated May 1, 2020 (ECF No. 27) ("Brehm Decl."), ¶¶ 28-38. Candidates who have earned delegates are required by party rules to choose their delegates in a way that may not correspond with the vote totals, and may veto delegates.   Id. The presence of prospective delegates on the ballot serves to organize the candidate's slate should they receive enough votes to earn delegates—it is not itself determinative

of who will serve as a delegate. [2] Id.  Therefore, as with the plaintiffs who sought to serve as delegates for plaintiff Yang, there is no actual harm to the proposed Plaintiff-Intervenors caused by a presidential primary not being held. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (requiring for standing that "the plaintiff must have suffered an injury in fact an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical") (citations omitted); Winpisinger v. Watson, 628 F.2d 133, 134-39 (D.C. Cir. 1980). In Winpisinger, appellants were candidates for delegate seats at the Democratic National Convention who asserted that appellee's conduct had lessened their chances of selection.  Id. at 137. The Court explained that "whether an appellant is viewed in the character of a voter, contributor, a noncontributing supporter or a candidate for a delegate post, a court would have to accept a number of very speculative inferences and assumptions in any endeavor to connect his alleged injury with activities attributed to appellees. Courts are powerless to confer standing when the causal link is too tenuous." Id. at 139.

In the case of prospective delegates for Senator Bernie Sanders, the claim that they have been harmed is even further diminished, because the campaigns of Senator Sanders and former Vice President Biden have agreed between themselves to allocate hundreds of delegates to Senator Sanders at the Democratic National Convention, including representatives from New York. See, e.g., Zach Montellaro, *Biden, Sanders reach convention compromise*, POLITICO (Apr. 30, 2020),

---

[2]  Moreover, as Plaintiff-Intervenors themselves point out, proposed Plaintiff-Intervenors' Memorandum of Law in Support of Motion for Preliminary Injunction, ECF No. 30-1, at p.5, the Supreme Court has held that "a State, or a court, may not constitutionally substitute its own judgment *for that of the Party*." Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 224 (1986) (emphasis added). The New York Democratic Party, which is not before this Court, set the applicable rules, and regardless of whether the primary election is held or not, controls the delegate allocation.  Granting the injunction would therefore be, at best, ineffective in redressing the alleged constitutional issue, and at worst, would be effectively substituting the Court's judgment for the party's, violating the very principle the intervenors espouse here.

https://www.politico.com/news/2020/04/30/biden-sanders-convention-delegates-226208

(describing a memo circulated by both campaigns noting that "the campaigns are committed to working together to ensure representation for Sen. Sanders in the New York delegation"); Stephen Ohlemacher & Bill Barrow, *Biden reaches deal to let Sanders keep hundreds of delegates*, Associated Press (Apr. 30, 2020), https://apnews.com/1250a619e0c8195fad1aa6aea08c63c8. Proposed Plaintiffs-Intervenors cannot bring claims on behalf of their pledged candidate nor the New York Democratic Party, neither of which is a party here.  Additionally, in the absence of Senator Sanders as a party to this action, the interest of the proposed Plaintiff-Intervenors is even more circumscribed. Potential delegates' right to ballot access is derivative of that of their candidate, and there is no independent right to appear on the ballot in the absence of the candidate to whom the prospective delegate is pledged.  See N.Y. Election Law § 2-122-a(6)(g). Thus, given the nature of a political party's delegate selection process and the limited and subordinate role that voting for pledged delegates in a primary has, nothing that this Court can do would provide the proposed Plaintiff-Intervenors with further redress. As such, the proposed Plaintiff-Intervenors lack standing, and both their motion to intervene and motion for preliminary injunction must be denied on this basis.

## II.  THE PROPOSED PLAINTIFF-INTERVENORS' MOTION TO INTERVENE SHOULD BE DENIED

Intervention as a matter of right is only permitted when the proposed intervenor has: (1) timely filed its application, (2) shown an interest in the action, (3) demonstrated that the interest will be impaired by the disposition of the action, and (4) shown that the interest is not adequately protected by the parties to the action. In re Bank of New York Derivatives Litig., 320 F.3d 291, 300 (2d Cir. 2003) (citing Fed. R. Civ. P. 24(a)(2)). "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." Id.

4

Permissive intervention is within the Court's discretion when an applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention under Rule 24(b) is within the discretion of the Court. If the proposed intervenor demonstrates that its claim and the main action have a question of law or fact in common, the "principal consideration is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties . . . Other relevant factors include the nature and extent of the intervenor's interest, whether the interests are adequately represented by the other parties, and whether parties seeking intervention will significantly contribute to the full development of the underlying factual issues in the action and to the just and equitable adjudication of the legal questions presented." USPS v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978).

Here, intervention should be denied under both Rule 24(a) and 24(b), because as described above, the proposed Plaintiff-Intervenors lack standing, and as such do not have a true interest in the action.  Pursuant to N.Y. Election Law § 2-122-a(6)(g), a prospective delegate's right to ballot access is derivative of that of the candidate whom they support, and Senator Sanders is not a party to this action. Plaintiff-Intervenors do not have any interest in this action absent Senator Sanders' interest, and he has asserted none. In any event, the agreement between the Sanders and Biden campaigns, discussed supra, to allocate Sanders delegates to the Democratic National Convention, vitiates any concrete interest that the proposed Plaintiff-Intervenors might have had even if Senator Sanders was a party. As such, intervention should be denied.

## III.  MANY OF THE PROPOSED PLAINTIFF-INTERVENORS' CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT

As explained in the State Defendants' Memo, the Eleventh Amendment to the U.S. Constitution bars federal suits against a state and its agencies unless (i) the state unambiguously consents to be sued, or (ii) Congress has enacted legislation explicitly, unmistakably, and validly

5

abrogating the state's Eleventh Amendment immunity. <u>See</u> State Defendants' Memo, at pp. 10-11; <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 44, 54-55 (1996); <u>Papasan v. Allain</u>, 478 U.S. 265, 276 (1986); <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 100 (1984).

The <u>Ex Parte Young</u> doctrine permits federal courts to consider suits for injunctive relief against individual state officers named in their official capacities based on federal causes of action. However, this exception does not extend to provide federal jurisdiction over questions of *state* law. <u>Kelly v. New York Civil Serv. Comm'n</u>, 632 F. App'x 17, 18 (2d Cir. 2016) ("Young does not allow a federal court to issue an injunction for a violation of state law."), citing <u>Pennhurst</u>, 465 U.S. at 106.

Substantial portions of proposed Plaintiff-Intervenors' memorandum in support of their motion for a preliminary injunction are based on alleged violations of state law. For example, whether the New York State Legislature's supposed delegation of authority to the Board of Elections is impermissible is entirely a question of New York State law, as confirmed by all of proposed Plaintiff-Intervenors' cited cases. <u>See, e.g.</u>, <u>Packer Collegiate Inst. v. Univ. of State of N.Y.</u>, 298 N.Y. 184, 189 (1948) (adjudicating an attempted delegation of legislative power under the New York State Constitution). Similarly, the question of whether the State Board's determination was "arbitrary, capricious, and an abuse of discretion"[3] is fundamentally a matter of state law, and the appropriate avenue for judicial review of New York State administrative agency determinations is a special proceeding in state supreme court pursuant to Article 78 of the N.Y. C.P.L.R. or as otherwise authorized by state law, e.g. ballot access challenges under Article 16 of the N.Y. Election Law.  Finally, the question of whether the State Board applied New York

---

[3] This includes the question of whether the State Board's interpretation of the word "suspended" was in accord with the meaning intended by the State Legislature.

Election Law § 2-122-a(13) with an impermissible retroactive effect is also a question of state law, as the *ex post facto* clause of the U.S. Constitution applies only to criminal laws. [4] See, e.g., Calder v. Bull, 3 U.S. 386, 399 (1798) ("[I]n the present instance, the act or resolution of the Legislature of Connecticut, cannot be regarded as an ex post facto law; for, the true construction of the prohibition extends to criminal, not to civil, cases."); DeMartino v. Comm'r, 862 F.2d 400, 409 (2d Cir. 1988) ("Nor was the 1986 amendment violative of the ex post facto clause of the Constitution, as this is a civil, not a criminal case.").

In this case, Plaintiff-Intervenors' state law claims should have been brought as a state court special proceeding pursuant to Article 16 of the New York Election Law, which provides for emergency judicial review of ballot access determinations. The bulk of Plaintiff-Intervenors' arguments are barred by the Eleventh Amendment as they arise under New York State law.

## IV.    THE PROPOSED PLAINTIFF-INTERVENORS' MOTION FOR A PRELIMINARY INJUNCTION WILL NOT SUCCEED ON THE MERITS

As explained in the State Defendants' Memo, a party seeking a mandatory preliminary injunction against a governmental action must demonstrate: (1) a clear or substantial likelihood of success on the merits of the underlying claim, (2) a strong showing of irreparable harm absent injunctive relief, and (3) that the public interest weighs in favor of granting the injunction.  State Defendants' Memo pp. 7-10. This burden is even greater when the relief requested is a special primary election, as Plaintiff-Intervenors are asking for: "The district court's decision here to order a special primary is a form of permanent injunction. The requirements for a permanent injunction

---

[4] Moreover, Plaintiff-Intervenors' argument with respect to retroactivity is specious, as Senator Sanders suspended his campaign <u>after</u> the passage of Election Law § 2-122-a(13). Chapter 56 of the Laws of 2020 was signed into law on April 3, 2020. https://www.nysenate.gov/legislation/bills/2019/s7506. Senator Sanders withdrew from the Democratic race for president on April 8, 2020. <u>E.g.</u> Sydney Ember, *Bernie Sanders Drops Out of 2020 Democratic Race for President*, NEW YORK TIMES (April 8, 2020), https://www.nytimes.com/2020/04/08/us/politics/bernie-sanders-drops-out.html.

are essentially the same as for a preliminary injunction, except that the moving party must demonstrate actual success on the merits." Martins v. Pidot, 663 F. App'x 14 (2d Cir. 2016), citing Pope v. Cty. of Albany, 687 F.3d 565, 569-70 (2d Cir. 2012); New York Civil Liberties Union v. New York City Transit Auth., 684 F.3d 286, 294 (2d Cir. 2011). Plaintiff-Intervenors are no more capable of satisfying this heavy burden than Plaintiffs.

For the same reasons as discussed at length in the State Defendants' Memo, the proposed Plaintiff-Intervenors cannot succeed on any, much less, all of these required elements. Even on those claims that are not inarguably barred by the Eleventh Amendment, proposed Plaintiff-Intervenors cannot demonstrate a clear or substantial likelihood of success on the merits of those claims. The Anderson-Burdick balancing test heavily weighs against proposed Plaintiff-Intervenors. The burden on proposed Plaintiff-Intervenors by being removed from the ballot is minimal in view of (a) the fact that the ballot is not determinative of representation to the Democratic National Convention in any event, Brehm Decl. ¶¶ 28-38[5], and (b) the agreement between the Biden and Sanders campaigns to allocate delegates to the Sanders campaign. Nor have proposed Plaintiff-Intervenors' due process rights been violated in any way, to the extent they are entitled to any process separate from that of Senator Sanders, who is not a party. See Election Law § 2-122-a(6)(g) (providing for the removal of delegates from a presidential primary ballot if the candidate's name will not appear). As explained supra and in the State Defendants' Memo, p.16

---

[5] Proposed Plaintiff-Intervenors note the supposed burden on Senator Sanders himself from being removed from the ballot following the suspension of his campaign. Proposed Plaintiff-Intervenors' Memorandum of Law in Support of Motion for Preliminary Injunction, at p.5. Senator Sanders, however, is not a party to this matter, and the burden on him is not at issue. Even if he was a party, any burden would be no greater than that on plaintiff Yang, as discussed in the State Defendants' Memo. Additionally, proposed Plaintiff-Intervenors imply that the State has violated the New York Democratic Party's rules for delegate selection, but again, this is the Democratic Party's argument to make, and they too are not a party to this action.

n.16, proposed Plaintiff-Intervenors could have filed a ballot access special proceeding in state court pursuant to N.Y. Election Law Article 16.  See Dekom v. Nassau Cty., 595 F. App'x 12, 14 (2d Cir. 2014) ("As we held in Rivera–Powell v. N.Y.C. Board of Elections, 470 F.3d 458 (2d Cir. 2006), New York Election Law § 16–102 provides an adequate post-deprivation remedy for random and unauthorized deprivations of due process in disputes over failure to list a candidate's name on the ballot in a New York election."); Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir. 1984) ("Where, as here, Article 78 gave the employee a meaningful opportunity to challenge the voluntariness of his resignation, he was not deprived of due process simply because he failed to avail himself of the opportunity.").

As the burden on proposed Plaintiff-Intervenors' rights is no greater than minimal, deferential review should be applied. See, e.g., Timmons v. Twin Cities Area New Party, 520 U.S. 351, 359 (1997); Price v. New York State Bd. of Elecs., 540 F.3d 101, 109 (2d Cir. 2008). As discussed at greater length in State Defendants' Memo, the State's interest in preventing the spread of the COVID-19 pandemic easily satisfies *any* standard of review under these circumstances. As explained, Brehm Decl. ¶¶ 40-54, holding an uncontested presidential primary election would put at minimum thousands of election workers at risk; put at risk all in-person voters who would otherwise not have had any active elections; and in light of the increased burdens on the State Board of a substantially higher proportion of absentee ballots, would endanger the successful operation of the contested contests that remain scheduled for June 23, 2020.

Furthermore, proposed Plaintiff-Intervenors' First Amendment claims are predicated on their claim that the State Board engaged in an allegedly improper application of N.Y. Election Law § 2-122-a(13). Such claims are foreclosed by the process available to them via a state court special proceeding discussed supra.  Under Rivera-Powell, "when a candidate raises a First Amendment

challenge to his or her removal from the ballot based on the allegedly unauthorized application of an admittedly valid restriction," such as Plaintiff-Intervenors' claim here, "the state has satisfied the First Amendment if it has provided due process." 470 F.3d at 469-70.

Finally, for the same reasons applicable to Plaintiffs discussed in the State Defendants' Memo, the proposed Plaintiff-Intervenors cannot demonstrate irreparable harm, nor does the balance of equities remotely weigh in their favor. See State Defendants' Memo, at pp. 20-24. As discussed above in relation to proposed Plaintiff-Intervenors' lack of standing, any harm to them is speculative and minimal, particularly in light of the Sanders campaign's agreement with the Biden campaign as to the allocations of delegates to the Democratic National Convention.  And, as discussed above in relation to the State's compelling interest in protecting its citizens from the ongoing COVID-19 pandemic, the balance of equities weighs decisively in the State Board's favor. Issuance of a preliminary injunction would do a great disservice to the public by putting in harm's way thousands of vulnerable people, who might then spread COVID-19 further among the populace. Further, the disruption that such an injunction would wreak on the State's election resources, which are already being pushed to the brink by the current pandemic, would potentially deprive voters in contested primaries of the ability to have a safe and fair election.  The weight of these dangers is manifestly greater to the benefit of holding an uncontested election.

## CONCLUSION

For the reasons set forth above, the State Defendants respectfully request that the Court deny the proposed Plaintiff-Intervenors' motion to intervene and their motion for a preliminary injunction in their entirety, together with such other relief as the Court may grant.

Dated:  New York, New York
        May 2, 2020

**LETITIA JAMES**
Attorney General
State of New York
*Attorney for State Defendants*

By: /s/ Matthew L. Conrad
     MATTHEW L. CONRAD
     Assistant Attorney General
     28 Liberty Street
     New York, NY 10005
     (212) 416-8610