# ADVOCATES FOR JUSTICE
*A Public Interest Organization*



*www.advocatesforjustice.net*

| | |
|---|---|
| **225 Broadway, Suite 1902**<br>**New York, NY  10007** | **Elizabeth Turner**<br>Executive Director |
| **TEL: 212-285-1400**<br>**FAX: 212-285-1410** | **Arthur Z. Schwartz, Esq.**<br>Lead Attorney<br>President, Board of Directors |
| **info@advocatesforjustice.net** | |

May 3, 2020

Hon. Analisa Torres
United States District Court
500 Pearl Street
New York, New York

      Re:    *Yang, et al. v. New York State Board of Elections*, et al.
               **Case No. 20-cv-03325 (AT)**

Dear Judge Torres:

      We write to briefly, and principally, to address some major factual inaccuracies asserted in Robert Brehm's Declaration in Opposition to the Motion for A Preliminary Injunction (ECF 27) which are then relied on by the Attorney General in making her argument in Defendants' Memorandum of Law in Opposition. (ECF 32). I assert the facts below from personal knowledge, having served as counsel to Bernie Sanders Presidential Campaign in New York in 2016, and as one of two primary liaisons to the State Democratic Committee in the selection of all delegates that year. In 2020 I have played an informal advisory role on the same issues.

Factual Corrections:

Defendants make two core factual misstatements:[1] (A) claiming wrongly that vote totals "are not determinative" and (B) claiming that Sanders and Biden have reached an agreement with regard to delegates. These are easily addressed.

---

[1]     Beyond this note that they exist, this letter will not address a number of legally misleading or misguided arguments that Defendants make as a result of their skewed version of the facts, since this letter is not intended to be a Memo of Law in Reply. *Compare*, *for example*, ECF 32 at 2-3 ("there is no actual harm to the proposed Plaintiff-Intervenors caused by a presidential primary not being held") *with Kurzon v. Democratic Nat'l Comm.*, 197 F. Supp. 3d 638, 642 (S.D.N.Y. 2016) ("Though Defendants contend that Kurzon lacks standing due to the unlikelihood that his preferred candidate, Senator Sanders, will earn the party's nomination in any event, **his injury lies not in the result of the nomination process**, but **rather in his right to participate fully in that process**. He therefore has standing to bring this action.") (emphasis added, citations omitted). The facts, as we set out here, make it clear that the Intervenor-Plaintiffs, as voters, as Delegate Candidates, and as members of the State Democratic Committee, have suffered injury as a result of the cancellation of the Presidential Primary.

# ADVOCATES FOR JUSTICE
*A Public Interest Organization*

Hon. Analisa Torres
Page 2

A.

The Democratic Convention Delegates elected from each Congressional District are bound **by law,** and by NY State Democratic Party Rules, to be those delegates who are elected to that position. Ranked, by the Board of Elections, by order of the number of votes they received in the primary. I have provided a more detailed description of the complex rules and process following my signature, a description which I can attest to by personal knowledge, having been counsel to the Sanders campaign in 2016. The core point is this:  the votes for individual delegates do, definitively (in a manner set out by pre-agreed upon rules), determine which delegates can attend the Convention, erve on Convention Commitees, vote on the Party Platform, and vote for a Vice-Presidential candidate. Defendants are mistaken in asserting otherwise.

For instance, if Bernie were to win 4 of 8 delegates in CD-12, those four individuals would be from the delegate slate that qualified for the ballot, and (subject to gender-equality related rules) those delegates would be those with the most votes. Neither the Party nor Sanders would have the power to **un**-elect a delegate who received the most votes.

B.

Defendants also misstate the nature of the Sanders and Biden statement relating to delegates. Although Sanders and Biden have come to an agreement with regard to statewide delegates already allocated in previous contests, they did not come to any agreement with regard to the New York delegation, because the allocation of delegates in all other states were determined by popular vote. In fact, the Biden-Sanders joint statement acknowledged that New York might be stripped of its delegates entirely for its illegal cancellation of the primary[2]. Thus, particularly as concerns the Intervenor Plaintiffs as voters, the Defendants' actions present a probably risk that they – and all registered Democrats in New York – will be deprived of *any* voice in the primary. Voters are the correct plaintiff to assert that harm.

Additionally, even if Sanders and Biden reach an agreement on sending New York delegates to the Convention *and* those delegates are delegates aligned to Sanders, there is no guarantee that those delegates will be the same individuals who petitioned, campaigned, and duly qualified for

---

[2] *See* Seitz-Wald, Alex [@aseitzwald], Twitter (April 30, 2020), (Official Statement, stating that Biden and Sanders are committed to working together to ensure representation for Senator Sanders in the New York delegation "**if the state remains eligible for delegates**[.]") (emphasis added). Retrieved from https://twitter.com/aseitzwald/status/1255870024402812928/photo/1.

*See also* Montellaro, Zach, "Sanders, Biden reach convention compromise," POLITICO, ("Sanders' campaign harshly condemned the move... Jeff Weaver, a senior adviser to Sanders, called for the state to be stripped of its delegates. The memo circulated on Thursday alludes to that possibility."). Retrieved from https://www.politico.com/news/2020/04/30/biden-sanders-convention-delegates-226208

# ADVOCATES FOR JUSTICE
*A Public Interest Organization*

Hon. Analisa Torres
Page 3

the ballot. They will likely be appointed by the New York State Democratic Committee and will be a combination of elected and party officials and donors.

<u>C.</u>

These facts make it clear why this Court must apply strict scrutiny under the First Amendment, and under the NY State Constitution, Article I and Article II, Section1. See *In re Zierbel*, 102 Misc. 626 (Sup Ct Erie County, 1918). *("No action by or failure to act on the part of the Legislature, in our opinion, can impair the rights of such voters. The Legislature 'may provide the manner in which and the time and place at which such absent electors may vote,' and in so far as the Legislature covers the subject that legislation beyond question governs, but the right to vote is not dependent on legislative action.").*

Respectfully submitted,

/s/ *Arthur Z. Schwartz*

Arthur Z. Schwartz
**Advocates for Justice**

Elena L. Cohen
J. Remy Green
Jonathan Wallace, *of counsel*
**Cohen&Green P.L.L.C.**

cc:   All Counsel

**ADVOCATES FOR JUSTICE**
*A Public Interest Organization*

Hon. Analisa Torres
Page 4

Appendix on the Delegate Selection Process.

In Paragraphs 38-42 of the Proposed Intervenor's Complaint Intervenor-Plaintiffs discuss the relevant sections of the 2020 Delegate Selection Plan of the New York State Democratic Committee (Exhibit A), which the NY State Board of Elections, prior to April 27, 2020, as a matter of policy and law had agreed to adhere to.

There was a two-part process that was followed. In sum, with limited exceptions provided by rules agreed in advance, the primary election **does** determine which delegates attend the convention. The Defendants' arguments otherwise are factually incorrect.

The first involved election of 184 Congressional District level delegates. That process started with any eligible enrolled Democrat (eligible being defined by residency in a Congressional District), who filed a form with the Board of Election and the State Democratic Committtee pledged to a candidate (Exhibit A page 13) being able to petition for placement on the Presidential Primary ballot as a delegate candidate. 500 signatures of enrolled Democrats in a Congressional District were needed to qualify. (Exhibit A page 14). The Presidential candidates could reject anyone who qualified. (Exhibit A page 15).

The Presidential candidates had their own requirements to get on the ballot. (Exhibit A, pages 9-10). Once that candidate submitted 5000 signatures from enrolled Democrats the rules state: "Any eligible candidate who is named as a Presidential Candidate in a timely and legally sufficient designating petition **shall appear as a Candidate on the Primary ballot throughout the State unless that individual files a declination of candidacy with the State Board** [which must be done within 3 days]."

The state presidential primary serves to decide the allocation of delegates. Any candidate who gets 15% of more of the vote statewide can then be allocated Congressional level delegates, with the number dependent on the vote in each Congressional District. Each Congressional District has an allocated total number of delegate slots, between 6 and 8 (Ex. A page 12). The primary vote is reported per Congressional District. The number of delegates pledged to a candidate who are elected is decided by the percentage of the vote that that candidate received in the Congressional District. If, for example, one candidate got 75% of the delegates in that Congressional District; so in the 5th CD, which is assigned 8 delegates, that candidate would win 6.(Ex. A. page 16)

Proceeding with that example, who among the 6 gets elected is subject to additional rules designed to make sure that there is "gender equality." (Ex. A pages 16-17). Critically: **the delegates always are the ones with the most votes withing their gender group** (and non-binary delegates receiving the most votes are simply placed on the slate).

# ADVOCATES FOR JUSTICE
*A Public Interest Organization*

Hon. Analisa Torres
Page 5

In the second step, there are **additional** delegates allocated in proportion to the statewide vote, Pledged Party Leaders and Elected Official Delegates (PLEOs)(Ex. A pages 19-21) (approximately 29 people) and Pledged At-Large Delegates and Alternates (Ex. A, pages (22-24) (approximately 61 people). Theoretically the slate of PLEO and At Large pledged delegates chosen by a campaign can be rejected by the State Democratic Committee meeting in Convention, but that Committee cannot force a delegate on a campaign which it has not agreed to.

In addition there are 46 Party Leader slots, and then slots for Senators and Congress Members, as well as NY State representative to the Democratic National Committee; these delegates are called "superdelegates," and they have limited voting power at the Convention.

At the Convention, all Committees, including Platform and Rules (which addresses future rules as well as those needed at the Convention) are proportionately assign to Presidential Candidate's delegates in proportion to the number of delegates they have at the Convention. (Ex. A Pages 35-37).